## The BOEING COMPANY

v.

## The UNITED STATES.

### No. 268–79C.

United States Court of Claims.

June 2, 1982.

Harold F. Olsen, Seattle, Wash., atty. of record, for plaintiff; Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., of counsel.

Stephen G. Anderson, with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and DAVIS and BENNETT, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge:

This case presents a contest over the amount owed to plaintiff, The Boeing Company (Boeing), by the defendant for certain costs incurred under a cost-plus-fixed fee contract between the Air Force and Boeing. The more precise issue is whether claimant properly allocated home office tax expenses to its various divisions. We affirm the decision of the Armed Services Board of Contract Appeals (ASBCA), denying plaintiff's claim.

In September 1972, Boeing was awarded a research and development contract by the Air Force. Payment was to be on a cost-plus-fixed fee basis; costs were generally defined in the agreement; and the fixed fee set. The contract included a "Cost

Accounting Standards" clause which required that the contractor comply with all cost accounting standards in effect on the date of the award of the particular contract and any standards effective at the time future government contracts were entered into by that contractor during this contract's performance period.[1] Cost Accounting Standards were promulgated by the Cost Accounting Standards Board (CASB) pursuant to 50 U.S.C.App. § 2168 (1976).

The present dispute centers on Cost Accounting Standard 403 (CAS 403), 4 C.F.R. § 403 (1981), which was included in this contract as of January 1, 1974. It provides the method by which government contractors are to allocate home office expenses to different segments of a corporate organization. The home office expenses now involved are several types of state and local taxes: real property; personal property; sales; use; business and occupation; and fuel and vehicle taxes. The controversy focusses first on the meaning of CAS 403 as applied to these expenses of Boeing, and then on the validity of the standard if its meaning is other than Boeing claims.

I

Boeing manufactures aircraft and other products for commercial and governmental use. Its Washington State business, that part of its operation with which we are concerned in this proceeding, was conducted through a corporate headquarters in Seattle and several operating divisions (segments) and subsidiaries. Boeing operates several Seattle-area plants, each of which is assigned to one division for administrative and maintenance purposes. This is usually the segment that predominantly uses the facility, most often the Commercial or Aerospace division, although most of the plants are utilized by all of the divisions. Control of a plant shifts along with usage— if another division becomes the predominant user of the facility, it assumes control over it.

Each Boeing division that controls the property, manufactures the goods or makes the sale subject to taxation, initially determines and records the amount of tax costs it incurs. Sales taxes are paid by each division and the other expenses are reported to the headquarters in the State of Washington and paid by the main office. The latter expenses are then allocated back to each segment and further allocated to particular contracts.

The specific question concerns Boeing's method of allocating its Washington state and local tax expenses between its various divisions. It has distributed these costs to each segment in proportion to the number of employees working in each segment; this is known as the employee base or headcount allocation system. The contracting officer disallowed part of plaintiff's claimed tax costs because they were derived by the headcount method which he held does not comply with CAS 403. According to the contracting officer, CAS 403 mandates the use of an assessment base method of tax cost allocation. Under this method, costs are allocated by using the base which was used to measure the particular tax. For example, because property taxes are assessed on the value of property, segment A would be allocated the property taxes attributable to the property it controls.[2]

1. "COST ACCOUNTING STANDARDS (1972 JUL)

(a) Unless the Cost Accounting Standards Board has prescribed rules or regulations exempting the Contractor or this contract from standards, rules, and regulations promulgated pursuant to 50 U.S.C.App. 2168 (Public Law 91–379, August 15, 1970), the Contractor, in connection with this contract shall:

\* \* \* \* \* \*

(3) Comply with all Cost Accounting Standards in effect on the date of awards of this contract or if the Contractor has submitted cost or pricing data, on the date of final agreement on price as shown on the Contractor's signed certificate of current cost or pricing data. The Contractor shall also comply with any Cost Accounting Standard which hereafter becomes applicable to a contract or subcontract of the Contractor. Such compliance shall be required prospectively from the date of applicability to such contract or subcontract. \* \* \* "

2. The tax bases involved here are: (1) real and personal property taxes (including commercial work-in-process inventory) which are based on assessed value of the property; (2) sales tax-

This contracting officer's decision was upheld in comprehensive opinions by the Armed Services Board of Contract Appeals. *The Boeing Co.*, ASBCA No. 19,224, 77–1 BCA ¶ 12,371, confirmed on reconsideration, *The Boeing Company*, ASBCA No. 19,224, 79–1 BCA ¶ 13,708. That tribunal held that CAS 403 requires that home office expenses be identified with and allocated to particular segments, if possible. It found that the tax costs before us could be specifically identified by use of an assessment base method of allocation.[3] Boeing's headcount method was rejected as not complying with the requirement that costs be specifically identified with a division to the maximum extent practical.

Plaintiff appeals to this court and both parties have moved for summary judgment.

## II

■ The initial problem is the proper meaning of CAS 403. Boeing claims that the ASBCA's interpretation is inconsistent with this court's prior rulings in *Boeing Co. v. United States*, 202 Ct.Cl. 315, 480 F.2d 854 (1973) (*Boeing I*) and *Lockheed Aircraft Corp. v. United States*, 179 Ct.Cl. 545, 375 F.2d 786 (1967); that the CASB did not intend to overrule those earlier decisions and did not reject the "broad benefits" test

they enunciated.[4] We are also told, in this connection, that CAS 403 utilizes the same allocation concepts as the former regulation, Armed Services Procurement Regulation (ASPR) § 15–201 *et seq.* In Boeing's view, the new standard does not mandate use of the assessment base method but is flexible in permitting any approach which measures benefits to the receiving segments from the tax expenditures.

A. The fundamental flaw in this analysis is its failure to recognize the importance of the new provision in CAS 403 requiring that costs be allocated directly to segments. The portion of the new standard that is controlling in this case is 403.40. It provides for a three tier process for allocating home office expenses. CAS 403.40(a)(1), 4 C.F.R. § 403.40(a)(1) (1981).[5]

A prime requirement is direct allocation of these expenses "to the maximum extent practical." If direct allocation of the individual expenses is impractical, they must be grouped into homogeneous pools and allocated according to criteria prescribed in 403.40(b). Under that subsection, central payments made by the home office are to be allocated directly to the individual segments if they can be so identified. 4 C.F.R. § 403.40(b)(4) (1981).[6] Otherwise, they are

---

es—based on each purchase of goods or services not intended for resale; (3) use taxes—based on tangible personal property manufactured by the claimant; (4) business and occupation taxes—based on gross proceeds of sales or value of products (Renton, one of the taxing localities, bases its business and occupation tax on the number of employees working in Renton; it has been treated separately throughout this proceeding. *See* Part VI, *infra* ); (5) fuel and vehicle taxes—based on market value.

3. As we have said, the Renton business and occupation tax was treated differently by the ASBCA. *See* Part VI, *infra.*

4. The headcount method was upheld as a proper measure of benefits, under the prior regulation, in *Boeing I* and *Lockheed.*

5. "§ 403.40 *Fundamental requirement.*
  (a)(1) Home office expenses shall be allocated on the basis of the beneficial or causal relationship between supporting and receiving activities. *Such expenses shall be allocated directly to segments to the maximum extent*

*practical.* Expenses not directly allocated, if significant in amount and in relation to total home office expenses, shall be grouped in logical and homogeneous expense pools and allocated pursuant to paragraph (b) of this section. Such allocations shall minimize to the extent practical the amount of expenses which may be categorized as residual (those of managing the organization as a whole). These residual expenses shall be allocated pursuant to paragraph (c) of this section. * * * [emphasis added]

6. "(b) The following subparagraphs provide criteria for allocation of groups of home office expenses.
  *       *       *       *       *       *
  (4) *Central payments or accruals.* Central payments or accruals which are made by a home office on behalf of its segments shall be allocated directly to segments *to the extent that all such payments or accruals of a given type or class can be identified specifically with individual segments.* Central payments or accruals are those which but for the existence of a

to be distributed "using an allocation base representative of the factors on which the total payment is based." *Id.* Expenses not directly allocable and not subject to grouping in pools are considered residual expenses and are allocated "by means of a base representative of the total activity of [each segment] * * * " 4 C.F.R. § 403.40(c) (1981). Allocation as a residual expense is to be minimized. 4 C.F.R. § 403.40(a)(1) (1981).

The primary question, then, is whether the two opposed accounting methods in dispute—the headcount method and the assessment base method—specifically identify tax expenses with individual segments. The parties agree that the assessment base method does directly allocate the tax expenses to individual Boeing divisions. Transcript at 580, Testimony of Dr. Howard Wright, June 3, 1975. *See The Boeing Co.,* ASBCA No. 19,224, 77–1 BCA ¶ 12,371 at 59,891; *The Boeing Co.,* ASBCA No. 19,224, 79–1 BCA ¶ 13,708 at 67,236 (reconsideration decision). Plaintiff also concedes that the headcount method is not a means of direct allocation but a surrogate measure of business activity. By the literal terms of the new accounting standard, therefore, the assessment base system is permissible and the headcount approach seems improper.

Contrary to Boeing, this standard of direct allocation is a *new requirement.* The regulation construed in *Lockheed* and *Boeing I,* old ASPR § 15–201, –202, –203, –205, 32 C.F.R. § 15.201 *et seq.* (1974), did not call for specific identification for tax expenses. The old ASPR contained a direct identification provision in 15–202(a). However, that provision applied only to *direct costs,* defined as those "which can be identified specifically with a particular cost objective." 32 C.F.R. § 15.202(a) (1974). Tax costs are considered indirect, defined as those "which, because of * * * [their] incurrence for common or joint objectives, * * *

[are] not readily subject to treatment as a direct cost." 32 C.F.R. § 15.203(a) (1974). Both of our prior decisions treated the taxes there involved as indirect costs and did not apply the direct identification section. *Lockheed,* 179 Ct.Cl. at 558, 564, 375 F.2d at 793, 797; *Boeing,* 202 Ct.Cl. at 320, 321, 480 F.2d at 857; *The Boeing Co.,* ASBCA No. 11866, 69–2 BCA ¶ 7898 at 36,749, 36,752– 754. But the indirect cost section in the former ASPR did not require specific identification—merely compliance with "generally accepted accounting principles," 15.- 203(d), and distribution based on the "benefits accruing to the several cost objectives." 15.203(c). In contrast, as we have pointed out, CAS 403 generally mandates direct allocation of home office expenses whether considered as direct or as indirect. 4 C.F.R. § 403.40(a)(1), (b)(4). That requirement is both new and important.

Boeing rests secondarily on the provision of the new accounting standard limiting application of the specific identification requirement to circumstances where it is "practical." *See* 4 C.F.R. § 403.40(a)(1); note 5, *supra.* The company defines practical, not as economically feasible, but as capable of "fair and accurate cost accounting." *It then defines fair accounting as being able to measure benefit to the segments from community services and, since it concludes that an assessment basis does not accurately measure such benefit, it reasons that that formula is an improper allocation method.* We do not agree.

*First, tax costs fall under 403.40(b)(4),* note 6, *supra,* not (a)(1), as indirect costs requiring groupings into logical and homogeneous pools prior to allocation to segments. *See generally* 32 C.F.R. § 15.203(b) (1974). The language of 403.40(b)(4) does not contain the limiting phrase, "to the maximum extent practical," found in (a)(1).

*Second,* assuming that the language in (b)(4) requiring specific identification "to

number of segments would be accrued or paid by the individual segments. Common examples include centrally paid or accrued pension costs, group insurance costs, State and local income taxes and franchise taxes, and payrolls paid by a home office on behalf of its segments.

Any such types of payments or accruals which cannot be identified specifically with individual segments shall be allocated to benefited segments using an allocation base representative of the factors on which the total payment is based." [emphasis added]

the extent that all such payments or accruals * * * can be [so] identified," includes the practicality limitation, we agree with the ASBCA that "practical" in its common usage means no more than economically feasible. As interpreted by plaintiff, the term would be merely a superfluous repetition of the explicit requirement in other parts of CAS 403 that the allocation system for home office expenses be based on a beneficial or causal relationship (*see* note 5, *supra*)—a requirement which we discuss next.

CAS 403 requires, in addition to direct allocation, that home office expenses be "allocated on the basis of the beneficial or causal relationship between supporting and receiving activities." 403.40(a)(1), 4 C.F.R. § 403.40(a)(1) (1981); see note 5, *supra*. Plaintiff equates this with the old ASPR standard in that both (it is said) emphasize the importance of measuring the beneficial relationship between the expenses and the corporate segments and both contain a causal relationship element. Boeing then reads cause, in the context of tax expenses, as the need for the community services financed by the taxes, and benefit as the provision of the services, *e.g.*, police and fire protection, by the community (this is sometimes called the "broad benefits" test).

We cannot, however, accept this "broad benefits" test as the sole controlling element under CAS 403. It is important at once to recognize, as Boeing does not, that neither *Boeing I* nor *Lockheed* rejected the assessment base as failing to meet the criterion of the prior regulation. All the court did there was to indicate that the assessment basis method was not the only permissible system under the then ASPR, but that the headcount method was permissible at that time. There was no analysis of, or ruling on, the benefit aspects of direct assessment. *Lockheed*, 179 Ct.Cl. at 553–54, 555, 565, 375 F.2d at 791–92, 798; *Boeing*, 202 Ct.Cl. at 320, 480 F.2d at 857; *The*

*Boeing Co.*, 69–2 BCA, at 36,752–753; 70–1 BCA, at 38,552 (distinguishing *General Dynamics* which upheld assessment basis as meeting the benefits test). *See General Dynamics*, ASBCA No. 13,868, 69–2 BCA ¶ 8044.

Moreover, the prior ASPR interpreted in those earlier cases did not contain a requirement of *causal* relationship. The language cited by Boeing, "with due consideration of the reasons for incurring the costs," 32 C.F.R. § 15.203(b) (1974), concerned formation of the logical cost groupings, not how those costs were to be allocated after being placed in pools.

The turning point in this case is, as the ASBCA held, that the assessment base method, incorporated into CAS 403, does measure a beneficial or causal relationship, as broadly conceived in our prior cases, between home office tax expenses and the receiving segments. The ASBCA recognized that, while the need for tax-funded public services is a cause of the taxes and that the receipt of the services is a benefit to the divisions, these are not the only benefits or causes. 77–1 BCA, ¶ 12,371 at 59,-891. Other causes of these taxes include the control over the property, or the purchase or business transaction which results in the tax levied. These causes squarely support, and relate to, the assessment base method.[7]

As for a beneficial relationship, claimant argues too far in saying that the broad benefits test precludes use of an assessment basis. If benefit is defined broadly, and it is, *see Lockheed*, 179 Ct.Cl. at 561–62, 375 F.2d at 795–96, then it is satisfied by the assessment system. The benefit here, commensurate with the causal relationship discussed above, is not the benefit of receiving tax-paid services but the advantages to the segments of having the home office pay their taxes, including reducing the adminis-

---

7. It is significant that CAS 403.40(a)(1), note 5 *supra*, puts the requirement for a beneficial or causal relationship in the disjunctive, requiring proof of a causal relationship *or* beneficial relationship, but not necessarily both. For that reason, though we find a beneficial relationship, we are not persuaded by Boeing's insistence that a beneficial relationship is always required even if a causal relationship exists.

trative burden and preventing tax liens and seizures.[8]

The broad benefit test does not require a one-to-one relationship between benefit and tax cost. *Lockheed*, 179 Ct.Cl. at 563–64, 375 F.2d at 797. In fact, the only evidence before the ASBCA on this issue indicated that there is no statistical correlation between headcount and tax expenditures (number of employees in a locality as compared to the amount of taxes paid). 77–1 BCA ¶ 12,371 at 59,878–879. Plaintiff offers no example where a specific identification/causal allocation does not also include some concept of broad and general benefit.

. Support for the inference that the CASB believed that an assessment base approach, as embodied in CAS 403, would comply with the beneficial or causal relationship requirement is found in the illustrative examples given in CAS 403.60. That subsection lists as acceptable bases for allocating central payments or accruals (and, . specifically, state and local income taxes and franchise taxes): "Any base or method which results in an allocation that equals or approximates a segment's proportionate share of the tax imposed by the jurisdiction in which the segment does business, as measured by the same factors used to determine taxable income for that jurisdiction." 4 C.F.R. § 403.60 (1981). These examples are illustrative, and were not intended to be exclusive.[9] Nevertheless, the example indicates that the CASB considered that an assessment base approach, the one used in the illustration,[10] satisfies that board's notion of the beneficial or causal relationship test. *See* 403.60(c).

B. *Claimant also makes some minor challenges to the conclusion that assessment base allocation is called for by CAS 403 with respect to taxes.* It is contended that 403.40(a)(1) requires all taxes to be placed in a single pool but that assessment base does not allow for this kind of pooling and this does not comply with CAS 403. The ASBCA correctly answered this argument in its determination that the argument's "fallacy derives from the appellant's conception of all taxes being for the same purpose, *i.e.* the funding of community services and so all includable in one pool with one (head count) base. We perceive no difficulty in treating each tax with a different assessment base separately and directly allocating those which may be specifically identified thereby with an individual segment and that which is not so identifiable being distributed on a base representative of the factors on which it is based." 77–1 BCA ¶ 12,371 at 59,896.

Boeing also claims that the assessment base method violates the anti-double counting provision in 402.20, 4 C.F.R. § 402.20 (1981). Again, the ASBCA properly pointed out that "a direct allocation of a particular tax cost to a segment on the basis of the tax assessment base would not involve double counting so long as the same tax cost was not retained in a pool and again allocated to the segment from that pool." 79–1 BCA ¶ 13,708 at 67,239.

### III

Assuming plaintiff can challenge contract provisions it has agreed to, *compare Sandnes' Sons, Inc. v. United States*, 199 Ct.Cl. 107, 113, 462 F.2d 1388, 1392 (1972)

---

**8.** The fact that tax deficiencies can result in the seizure of any property, not merely that included in the assessment base, is not relevant. We deal in any case with taxes paid by the home office, and the method of allocation is immaterial. The benefit accrues to the segment because there is a home office paying the expense; if there was no home office to pay, the lien would be only on the segment's property under either the assessment or the headcount basis.

**9.** Plaintiff repeatedly argues that CAS 403 should be interpreted flexibly and that, even if

the assessment base method does comply with the standard, it is not the only lawful means of allocating costs. True, the standard does not necessarily mandate any particular allocation method. The choice we must make here, however, is between assessment base and headcount, and we reject the latter because it does not adequately identify costs with segments.

**10.** A base which uses "the same factors [which are] used to determine taxable income for that jurisdiction" is an assessment base measure.

with *Rough Diamond Co. v. United States,* 173 Ct.Cl. 15, 351 F.2d 636 (1965), *cert. denied,* 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966), we now explore Boeing's challenge that the interpretation we have just upheld in Part II, *supra,* violates the authorizing legislation.

■ As a general rule, "Where there is a 'broad congressional grant of administrative authority to prescribe rules and regulations to effectuate the provisions of the Act * * * our scope of review is limited * * * [t]his court * * * can invalidate such a regulation only if it clearly contradicts the terms or purposes of the statutes.'" *Boeing,* 202 Ct.Cl. at 340, 480 F.2d at 868–69 (1973). The CASB was thus permitted to adopt reasonable regulations not clearly disallowed by a statute. *See Boeing,* 202 Ct.Cl. at 339, 480 F.2d at 868.

■ In this light, we have to reject the contentions that the assessment base method infringes the uniformity and cost accuracy requirements of the Defense Production Act Amendments of 1970, 50 U.S.C. § 2168 (1976), and the policy of encouraging competition among potential contractors embodied in the Armed Services Procurement Act of 1947, 10 U.S.C. §§ 2301 *et seq.* (1976) (ASPA).

As to the alleged failure of the assessment basis to result in accurate cost accounting, that point is, for the most part, a reprise of plaintiff's earlier claim that the method does not comport with CAS 403. As we have said, while the "causal or beneficial relationship" measured by CAS 403

differs from that used in *Lockheed,* it is still a permissible measure. Our holding in *Boeing I* sustaining a regulation precluding reimbursement to government contractors for commercial inventory tax expenses indicates that allocation schemes which do not fully and meticulously measure tax-funded community services comply with statutory requirements of accuracy and fairness. The CASB is given by its statute broad authority to promulgate regulations; the only limitation is that the regulations "achieve uniformity and consistency." 50 U.S.C.App. § 2168(g) (1976). CAS 403 achieves this by treating tax expenditures in the same way, and does not exceed the CASB's authority.

Plaintiff's second statutory argument, that CAS 403 results in differing treatment of contractors in different states allegedly reducing their competitiveness, was expressly rejected by this court in *Boeing I* as a ground for voiding a comparable cost regulation. 202 Ct.Cl. at 340–41, 480 F.2d at 869.[11] The court in *Boeing I* likewise rejected any Fifth Amendment claim arising out of the same argument of disparate treatment. 202 Ct.Cl. at 342–43, 480 F.2d at 870.

### IV

■ Another assault on the validity of CAS 403 concerns the manner in which it was promulgated. The assertion is that the CASB failed to comply with the notice and comment requirements of the Cost Accounting Standards Act. *See* 50 U.S.C.App. § 2168(i)(A) (1976).[12] We do not find this to be so.

11. The court said that the governing statutes cannot "be construed to mean that Government procurement policies must be dependent upon a meticulous study of the variable cost situations of contractors operating in all 50 states resulting from the differences in the tax structures of the states and their political subdivisions, and how such structures may conceivably (taking into consideration the contractors' accounting systems) affect the contractors' costs on its Government contracts."

12. "(i)(A) Prior to the promulgation under this section of rules, regulations, cost-accounting standards, and modifications thereof, notice of the action proposed to be taken, including a

description of the terms and substance thereof, shall be published in the Federal Register. All parties affected thereby shall be afforded a period of not less than thirty days after such publication in which to submit their views and comments with respect to the action proposed to be taken. After full consideration of the views and comments so submitted the Board may promulgate rules, regulations, cost-accounting standards, and modifications thereof which shall have the full force and effect of law and shall become effective not later than the start of the second fiscal quarter beginning after the expiration of not less than thirty days after publication in the Federal Register." *See also* 4 C.F.R. § 301.5 (1981).

One contention is that the CASB failed to indicate more clearly that the new cost standard would require use of the assessment base allocation system for tax expenses, and would differ from the prior method upheld in *Boeing I* and *Lockheed*. But the statute requires prior disclosure of the terms and substance of the proposed rule, not an analysis of its ramifications. The fact that the notice need not even state with detailed specificity all of the rules which may later be adopted is indicative of the less than full explanation required to satisfy the regulatory procedures. *See California Citizens Band Assn. v. United States*, 375 F.2d 43, 48 (9th Cir.), *cert. denied*, 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967). Aside from the language of the income tax example in 403.60, which will next be discussed, the rule (*i.e.* CAS 403) was adopted as proposed and the plaintiff had sufficient information from which it could have gleaned the change in the new standard from the prior ASPR.[13]

The only modification from the draft to the final rule was in the income tax example in 403.60. The income tax illustrative base was changed from one allocating expenses based on profit or loss of each segment to one based on the "same factors used to determine taxable income for that jurisdiction." Boeing complains that this was a substantial change which should have been first issued as a proposal subject to comment for a period of thirty days. That argument makes far too much of very little.

For one thing, the change in the income tax example did not affect application of the assessment base method. That system is required because of the direct identification provision for indirect costs—a provision which was already in the draft. The income tax illustration does not determine the proper allocation method but is only instructive as to the intent of the CASB with respect to what is a "beneficial or causal" relationship.[14] And for that purpose it was helpful but not decisive.

Even if the change in the illustration was really material to this case, it was within the range of permissible alterations after a period of administrative comment. The particular change was made in response to critical comments by a majority of those commenting on this point. 4 C.F.R. § 403, Preamble A, Part 7 (1981). The fact that changes were possible should not have been unexpected since the CASB specifically requested comments on the income tax example. 37 Fed.Reg. 13,064 (1972). A new notice is not required when an agency "adopts the suggestions of interested parties." *Ethyl Corp. v. EPA*, 541 F.2d 1, 48 (D.C.Cir.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 96, 49 L.Ed.2d 394 (1976). *Accord, Northwest Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1319–20 (8th Cir. 1981); *Trans-Pacific Freight v. FMC*, 650 F.2d 1235, 1248 (D.C.Cir.1980).

### V

■ Boeing's final charge is that the CASB was unconstitutionally constituted and its acts void, including the promulgation of cost accounting standards. The difficulty plaintiff sees is that the members of the CASB were not appointed by the President with the advice and consent of the

---

**13.** Plaintiff cites several exhibits which, it claims, show that the CASB knew it was proposing a drastic change in allocation methods. None of these indicates any expected drastic change from the proposal to the final draft. The statements suggest only that republication might be beneficial, not necessary, and they are unclear as to why it would be beneficial and what section they are referring to. Moreover, they suggest that interested parties, like Boeing, were already apprised of the potential change in measurement since the CASB explanations were responses to complaints by or probably known to those interested parties.

As far as we can determine, no more than a few government contractors were interested in maintaining the headcount method at issue in this case.

**14.** Plaintiff could not have been misled by the change. It admits that the originally proposed illustration also used an assessment base approach. Plaintiff's Reply Brief, at 28. If that was Boeing's belief then, taking into account the specific identification provision already in the proposal, plaintiff should have been aware that its headcount method was probably no longer to be permitted.

Senate, as said to be required by the Appointments Clause of the Constitution, Art. II, § 2, cl. 2.[15]

The argument for this position is by no means insubstantial, but we need not consider or rule upon it. Even if we were to accept plaintiff's full constitutional contention, we could not hold Boeing entitled to the monetary relief it seeks in this case.[16] The reason is that the Department of Defense itself adopted CAS 403 and that Department had the independent authority to accept the standard on its own. Under the same general authority which grounded adoption of the Armed Services Procurement Regulations, the Defense Department could adopt or accept any permissible cost standard, no matter who the proposer. The Department did this in Defense Procurement Circular 99, establishing the relevant CASB standards (including CAS 403) as the Department's own. The Department was not deprived of its authority to adopt these standards because it may have assumed mistakenly (if plaintiff is right as to the legal ineffectiveness of the CASB and its productions) that the law compelled it to do so. Whatever the departmental motivation, that agency permissibly established the standard and intended to do so. Even if the Cost Accounting Standards Act was invalid, the law would still not limit the sources from which the Defense Department could find and pick its cost standards—so long as those standards were substantively proper (as we have held *supra*).[17]

If it be necessary—which we do not think—that the CASB and its standards must have some sort of official standing in themselves, the principle of the *de facto* officer prevents in this case the past acts of the CASB from being held invalid. *See Buckley v. Valeo*, 424 U.S. 1, 142–43, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976). As in that case (concerning the Federal Election Commission), the past acts of the CASB would be "accorded *de facto* validity." Equity and practicality demand that result. The number of contracts which would need to be altered, the amount of moneys involved, and the agreement by the contractors to the CAS 403 standards would justify nonretrospective application of any current ruling of unconstitutionality of the method of appointment of the CASB members.

## VI

Throughout this litigation the parties have treated the Renton business and occupation tax separately. Defendant concedes that the Renton tax cannot be identified directly with Boeing's segments because it is expressed on a sliding scale, the tax per employee declining as the total number of employees increases, based on the number of Boeing employees in Renton. Plaintiff argues that its headcount method should apply, allocating the Renton tax according to the total number of employees of each segment as a percentage of the total work force.

The ASBCA, pursuant to 403.40(b)(4), allocated the tax between the segments according to the proportion of the number of employees of that segment in Renton as a percentage of the total Renton Boeing work force. This method is consistent with the standard's requirement that "payments or accruals which cannot be identified directly with individual segments shall be allocated to benefited segments using an allocation base representative of the factors on which the total payment is based." 403.40(b)(4). This result harmonizes with our analysis in this opinion, and we affirm the ASBCA's conclusion on this point, as well as on the other taxes now before us.

---

**15.** The Cost Accounting Standards Board was composed of five members, the Comptroller General and four persons appointed by him. Only the Comptroller was appointed by the President and confirmed by the Senate, and that was only as the Comptroller, not for the position of Chairman of the CASB.

**16.** Of course, we can grant only monetary relief and are not authorized to enter a declaratory judgment on the validity of the CASB as it was composed.

**17.** There is no doubt, for instance, that Defense could accept the proposals of a committee of private expert accountants which had no official status whatever.

### Conclusion

For the foregoing reasons, we grant defendant's motion for summary judgment, deny plaintiff's cross-motion, and dismiss the petition.[18]

---

18. Defendant's motion to strike the affidavit of Harold F. Olsen is denied.