**UNITED STATES, Appellant,**

v.

**LOCKHEED CORPORATION and Lockheed Missiles and Space Co., Appellees.**

**Appeal No. 86–1177.**

United States Court of Appeals,
Federal Circuit.

April 15, 1987.

Terrence S. Hartman, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellant. With him on the brief were Richard K. Willard, Assistant Attorney General and David M. Cohen, Director. Donald J. Kinlin, Dept. of the Air Force, Wright-Patterson Air Force Base, Ohio, of counsel.

Clarence T. Kipps, Jr., Miller & Chevalier, Chartered, of Washington, D.C., argued for appellees. With him on the brief were Joseph G. Twomey and Robert C. Gusman, of Calabasas, Cal., of counsel. Also on the brief were Robert K. Huffman and Thomas D. Chevalier, Miller & Chevalier, Chartered, of Washington, D.C., of counsel.

Before DAVIS, Circuit Judge,
BENNETT, Senior Circuit Judge, and
BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

The United States appeals from a decision of the Armed Services Board of Contract Appeals (ASBCA or Board) approving the manner in which the California Franchise Tax expense paid by the Lockheed Corporation (Lockheed) home office is allocated by Lockheed to its various unincorporated divisions and wholly-owned subsidiaries (segments) which comprise Lockheed. We affirm.

## BACKGROUND

Extensive findings of fact and a lengthy and thorough discussion of the issues may be found in the Board's opinion. 86–1 BCA ¶ 18,614 (ASBCA 1985). Familiarity with that opinion will be presumed. Reference to the Board's findings of fact will be cited by their paragraph number as "FF —."

In the cases of *Lockheed Corporation and Lockheed Missiles & Space Company, Inc.*, 80–1 BCA ¶ 14,222 (ASBCA 1980) and 80–2 BCA ¶ 14,509 (ASBCA 1980), the Board found that Lockheed's two-step four-factor method (Lockheed Method) for allocating California Franchise Tax expense from Lockheed's home office to its individual segments complied with Cost Accounting Standard 403, 37 Fed.Reg. 26680 (1972) (CAS 403), captioned "Allocation of Home Office Expenses to Segments." The government was unable to perfect an appeal of those decisions because the contract at issue was not subject to the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* (1982). Hence this appeal, which arises in the context of contracts that were entered into by the parties subsequent to the effective date of the Contract Disputes Act. The parties stipulated before the Board that collateral estoppel and *res judi-*

*cata* were not applicable in the present dispute.

The government contended that the Lockheed Method did not comply with CAS 403 and Interpretation No. 1 to CAS 403 (Interpretation No. 1). Lockheed contended that the previous decisions correctly held that the Lockheed Method complies with CAS 403. A statement of issues and extensive stipulations were agreed upon and the parties presented the appeal to the Board on a stipulated record.

The parties agreed that CAS 403 requires the allocation of California Franchise Tax expense from Lockheed's home office to its individual segments based on the causal relationship, *i.e.*, the assessment base for the tax. The government asserted that under CAS 403 and Interpretation 1 the California Franchise Tax expense must be allocated only to those individual segments doing business within the State of California, and that no credits should be allocated to loss segments. This assertion was based upon its contention that the Cost Accounting Standards Board (CASB), in promulgating CAS 403 and Interpretation No. 1, determined that doing business within each taxing jurisdiction is the relevant cause of the incurrence of state income and franchise taxes, thereby comporting with CASB's concept of beneficial or causal relationship between such expenses and receiving segments. The government further contended that doing business within the jurisdiction means having apportionment factors within the state (*i.e.*, for the California Franchise Tax, having property, payroll and sales within the State) and that segment net income is not a significant and relevant cause of the California Franchise Tax.

The Board held, contrary to the government's contentions, that Lockheed's California Franchise Tax expense must be allocated indirectly to its segments pursuant to the last sentence of CAS 403.40(b)(4) because direct allocation of tax expenses under CAS 403 requires a direct link or mechanical calculation which traces the tax to its source and the very basis underlying apportionment of unitary business income is the impossibility specifically to identify the income of a multistate business to any individual state. The Board further held that the causal relationship required by CAS 403 requires the consideration of segment net income as one of the factors in the allocation base and, having so found, then pursuant to the parties stipulation, the Lockheed Method complied with CAS 403 and was to be used by the parties for such allocation purposes. The Board further concluded that Interpretation 1 was not an issued cost accounting standard promulgated pursuant to statute and that the Department of Defense was without authority to adopt an invalid standard. The government appeals to this court pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 607(g)(1)(A) (1982).

## ISSUES

(1) Whether the Board correctly held that the California Franchise Tax for a multistate enterprise cannot be allocated directly to the individual segments of that enterprise pursuant to CAS 403.

(2) Whether the Board correctly held that the causal relationship required by CAS 403 mandates consideration of segment net income as one of the factors in the allocation base.

## OPINION

 Under our scope of review, the Board's conclusions of law are not final and are thus freely reviewable. 41 U.S.C. § 609(b) (1982); *American Electronic Laboratories, Inc. v. United States*, 774 F.2d 1110, 1112 (Fed.Cir.1985). This court is not required to grant finality to the Board's legal interpretation of CAS 403 and Interpretation 1 as the interpretation of regulations which are incorporated into government contracts is a question of law which this court is free to resolve. *United States v. Boeing Co.*, 802 F.2d 1390, 1393 (Fed.Cir. 1986). "However, 'legal interpretations by tribunals having expertise are helpful to us, even if not compelling.'" *Id.*, citing *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984).

## I

### California Franchise Tax

The California Franchise Tax is a tax imposed on a corporation doing business in the State of California and is "measured by its net income," subject to a minimum tax of $200. FF 15. In the case of a taxpayer which operates only in California, the tax is computed by multiplying the taxpayer's net income by the applicable tax rate. FF 17. If corporations have net income from sources both within and outside the State of California, the tax imposed is "measured by the net income derived from or attribut-able to sources within California." FF 17. Hence, the tax is computed by multiplying the taxpayer's total net income by an allocation or apportionment percentage by the applicable tax rate. FF 15, 17 and 18. The apportionment percentage is the average of the ratios of the taxpayer's California property to its total property, its California payroll to its total payroll, and its California sales to its total sales. FF 19. Thus, California's formula for apportioning business income derived from or attributable to sources both within and outside the state for purposes of California Franchise Tax liability can be expressed as follows:

$$\text{Total Business Income of Enterprise} \times \frac{\text{Cal. Property of Enterprise}}{\text{Total Property of Enterprise}} + \frac{\text{Cal. Payroll of Enterprise}}{\text{Total Payroll of Enterprise}} + \frac{\text{Cal. Sales of Enterprise}}{\text{Total Sales of Enterprise}} = \text{Cal. Business Income of Enterprise}$$

3

For income year 1974, Lockheed's total net business income was $29,963,748. FF 28. To apportion this net income to California and other sources, Lockheed used its apportionment percentage, which it computed by adding the percentage of Lockheed's California property as a portion of its total property (85.5875%), the percentage of its California payroll as a portion of its total payroll (75.0711%) and the percentage of its California sales as a portion of its total sales (51.8551%) and dividing the sum of these percentages (211.5137%) by three. Lockheed then multiplied the resulting California percentage, 70.5046% by its total net income to derive the portion of this total business net income derived from or attributable to California sources, $21,125,821. After minor adjustments, the balance of $21,089,316 multiplied by the applicable California franchise rate of 9 percent produced a tax liability of $1,898,038. After adding to this figure a $26,291 tax on "tax preference" items, Lockheed's total California Franchise Tax liability for income year 1974 was $1,924,329. FF 28.

Lockheed's net income of $29,963,748 for income year 1974 is the sum of the net income (net losses) of its segments, summarized as follows (in millions):

| CALAC | GELAC | LMSC | ALL OTHERS | TOTAL |
|---|---|---|---|---|
| ($75.5) | $54.5 | $59.3 | ($8.3) | $30.0 |

FF 30.

The amount of each segment's income year 1974 property, payroll and sales are summarized as follows (in millions):

| Property | CALAC | GELAC | LMSC | ALL OTHERS | TOTAL |
|---|---|---|---|---|---|
| Total | $ 1,167 | $166 | $ 280 | $164 | $ 1,777 |
| Calif. | 1,158 | — | 277 | 86 | 1,521 |
| Calif. % | 99% | 0% | 99% | 52% | 86% |
| Payroll | | | | | |
| Total | $ 362 | $146 | $ 347 | $133 | $ 988 |
| Calif. | 353 | — | 329 | 45 | 732 |
| Calif. % | 99% | 0% | 95% | 34% | 74% |

| Sales | CALAC | GELAC | LMSC | ALL OTHERS | TOTAL |
|---|---|---|---|---|---|
| Total | $ 1,494 | $386 | $1,032 | $324 | $ 3,236 |
| Calif. | 704 | 7 | 875 | 92 | 1,678 |
| Calif. % | 47% | 2% | 85% | 28% | 52% |
| Average Calif. % (Stip. 36) | 81.7% | 0.7% | 92.9% | 38.0% | 70.5% |

FF 31.

## II

### Cost Accounting Standards

The parties stipulated that the California Franchise Tax payment is a central payment or accrual to be allocated pursuant to CAS 403.40(b)(4), which provides:

(4) *Central payments or accruals.* Central payments or accruals which are made by a home office on behalf of its segments shall be allocated directly to segments to the extent that all such payments or accruals of a given type or class can be identified specifically with individual segments. Central payments or accruals are those which but for the existence of a number of segments would be accrued or paid by the individual segments. Common examples include centrally paid or accrued pension costs, group insurance costs, State and local income taxes and franchise taxes, and payrolls paid by a home office on behalf of its segments. Any such types of payments or accruals which cannot be identified specifically with individual segments shall be allocated to benefited segments using an allocation base representative of the factors on which the total payment is based.

FF 9 and 31.

The parties further stipulated that "CAS 403 requires the allocation of California Franchise Tax expense from Lockheed's home office to its individual segments based on the causal relationship, i.e., the assessment base for the tax." 86 BCA ¶ 18,614 at 93,528.

## III

### Direct Allocation of the Tax

■ Under CAS 403.40(b)(4), if the tax expense "can be specifically identified with individual segments," it must be directly allocated to those segments. FF 9. The Board thoroughly considered the specific identification issue and held that Lockheed's California Franchise Tax cannot be directly allocated to segments because a segment's contributions to the cause of the tax cannot be specifically identified. 86-1 BCA ¶ 86,614 at 93,532-534. We agree.

As the Board stated:

While we agree with the Government that it may be possible specifically to identify some joint costs of segments and, therefore, meet the criteria for specific identification of the first sentence of CAS 403.40(b)(4), we conclude that it is not posile [sic] in the type of factual situation which exists in this appeal. The very basis underlying apportionment of unitary business income is the impossibility specifically to identify the income of a multistate business to any individual state.

*Id.* at 93,534.

In its Restatement of Objective, Policies and Concepts (1977) CASB stated:

... the Board believes in the desirability of direct identification of costs with final cost objectives where the following allocation characteristics exist:

1. The beneficial or causal relationship between the incurrence of cost and cost objectives is *clear and exclusive* ....

86-1 BCA ¶ 86,614 at 93,532 (emphasis added).

■ Further, the plain meaning of the term "identify specifically" requires a clear, exclusive and directly traceable rela-

tionship between the expense and the segment. This interpretation is fully consistent with the decision in *Boeing Co. v. United States*, 680 F.2d 132, 230 Ct.Cl. 663 (Ct.Cl.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 343 (1983) (Boeing I). The Court in *Boeing I* stated:

> We perceive no difficulty in treating each tax with a different assessment base separately and directly allocating those which may be specifically identified thereby with an individual segment and that which is not so identifiable being distributed on a base representative of the factors on which it is based.

680 F.2d at 138.

In *Boeing I,* each of the taxes required to be directly allocated had a clear, exclusive and mechanically traceable relationship to the individual segments except one, the Renton business and occupation tax (Renton tax). As this tax was not mechanically traceable because it was affected by the number of employees in other segments, the court in *Boeing I* held that the Renton tax could not be directly allocated. 680 F.2d at 141. Lockheed's California Franchise Tax is similar to the Renton tax in that no traceable relationship exists because net income and apportionment percentage factors in one segment interact with those in another in computing the tax expense.

The causal relationship between Lockheed's California Franchise Tax expense and Lockheed's individual segments is not exclusive or in any way directly traceable. The inability to specifically identify Lockheed's California Franchise Tax expense with individual segments results from numerous interactions among segment net incomes (losses) and apportionment percentage factors in the computation of the tax expense.

Multiplying Lockheed's $30 million total net income for income year 1974 by Lockheed's 70.5 percent apportionment percentage to arrive at the $21 million net income assessment base destroys the ability to identify the amount of a segment's causal contribution to the $21 million assessment base and the resulting $1.9 million tax expense ($21 million times 9%). One of the several reasons for this is that Lockheed's 70.5 percent apportionment percentage results from intermingling the segment's California and total property, payroll and sales so that the amount of the causal contribution of any segment to the 70.5 percent apportionment percentage cannot be specifically identified.

When segments are combined in the calculation of Lockheed's California Franchise Tax expense, the causal factors of one segment are added to, divided by and multiplied by the causal factors of another segment. This interaction results in the amount of tax cost caused by a segment being affected by the existence of other segments and the amount of other segments' causal factors. For example, but for the income (loss) and property, payroll and sales of the other segments, Lockheed's LMSC segment would have incurred income year 1974 California Franchise Tax liability of $5 million ($59.3 million income × 92.9% California apportionment percentage × 9%). Yet Lockheed's total California Franchise Tax liability was only $1.9 million, largely as a result of CALAC's loss which reduced Lockheed's net income to $30 million and a third segment's (GELAC's) non-California property, payroll and sales which reduced Lockheed's apportionment percentage to 70.5 percent.

Even though CAS 403.40(b)(4) requires direct allocation of indirect costs, we hold that no direct allocation is required unless the cost has a clear, exclusive and mechanically traceable relationship to the individual segment.

## IV

### Net Income as a Factor in the Allocation Base

Since we have held that the California Franchise Tax cannot be directly allocated to segments, the tax must be allocated under the last sentence of CAS 403.40(b)(4), which provides for allocation "using an allocation base representative of the factors on which the total payment is based." FF 9. At the heart of the dispute is the follow-

ing stipulation found in the parties' Statement of Issues:

> To further expedite this appeal the parties stipulated that, if CAS 403 permits net income to be included as a factor in the allocation base, the Lockheed Method complies with CAS 403 and shall be used by the parties for the allocation of California Franchise Tax expense from Lockheed's home office to its individual segments. If CAS 403 does not permit income to be included as a factor in the allocation base, the parties stipulate that the Government's three-factor method (referred to as "Method A" ...) complies with CAS 403 and shall be used by the parties for the allocation of California Franchise Tax expense from Lockheed's home office to its individual segments.

86–1 BCA ¶ 18,614 at 93,529.

The Lockheed Method, described by the government as a two-step, four-factor method, can be expressed as follows:

\* \* \* STEP I \* \* \*

$$\text{Segment Net Income} \times \frac{\dfrac{\text{Segment's Cal. Property}}{\text{Segment's Total Property}} + \dfrac{\text{Segment's Cal. Payroll}}{\text{Segment's Total Payroll}} + \dfrac{\text{Segment's Cal. Sales}}{\text{Segment's Total Sales}}}{3} = \text{Segment's Net Income Attributable To Cal.}$$

\* \* \* STEP II \* \* \*

$$\frac{\text{Segment's Net Income Attributable To Cal.}}{\text{Total Segment Net Income Attributable To Cal. for All "Profitable" Segments}} \times \begin{array}{l}\text{Cal. Franchise}\\\text{Tax Incurred}\\\text{By Unitary}\\\text{Enterprise}\end{array} = \begin{array}{l}\text{Segment's Allocation}\\\text{of Cal. Franchise}\\\text{Tax Expense}\end{array}$$

*See* FF 33.

---

The government's Method A is expressed by the following formula:

$$\text{Total Business Income Of Enterprise} \times \frac{\dfrac{\text{Cal. Property Of Segment}}{\text{Total Property of Enterprise}} + \dfrac{\text{Cal. Payroll Of Segment}}{\text{Total Payroll of Enterprise}} + \dfrac{\text{Cal. Sales Of Segment}}{\text{Total Sales of Enterprise}}}{3} = \begin{array}{l}\text{Cal.}\\\text{Business}\\\text{Income}\\\text{Of}\\\text{Segment}\end{array}$$

FF 36.

---

As can be seen from the parties' stipulation, the parties' controversy revolves around their differing interpretation of the word "factors" and their disagreement over the impact of Interpretation 1 on this issue. Interpretation 1 provides as follows:

> By means of an illustrative allocation base in Section 403.60, the Standard provides that income taxes are to be allocated by "any base or method which results in an allocation that equals or approximates a segment's proportionate share of the tax imposed by the jurisdiction in which the segment does business, as measured by the same factors used to determine taxable income for that jurisdiction." This provision contains two essential criteria for the allocation of income taxes from a home office to segments. First, the taxes of any particular

jurisdiction are to be allocated only to those segments that do business in the taxing jurisdiction. Second, where there is more than one segment in a taxing jurisdiction, the taxes are to be allocated among those segments on the basis of "the same factors used to determine the taxable income for that jurisdiction." The questions that have arisen relate primarily to whether segment book income or loss is a "factor" for this purpose. FF 41.

The controversy is highlighted in FF 39: The government expert agreed that net income subject to California tax could not be computed without including net income. However, in his view this was not a "factor" since it was not an apportionment factor.... The same expert did recognize that a variation in the net income of the segments, while not, in his opinion, the cause of the tax did affect the amount paid because it was the measuring device and would result in variation of the California Franchise Tax.... Appellant considers the cause, for cost accounting purposes, to be the item or items which show a correlation with the cost. It was the opinion of appellant's expert witnesses that, for ... allocation under CAS 403, the cause of the California Franchise Tax was the net income.... Under the facts present in this appeal, there is a close correlation between the California Franchise Tax and Lockheed's total net income....

The Board found that the term "factors" is used in the broad and generic sense, not being used as a term of art meaning the "apportionment factors," and that the major component (net income) for the tax variation could not be disregarded in finding compliance with the requirements of CAS 403. 86–1 BCA ¶ 18,614 at 93,540. In other words, the Board held that a significant factor in causing the California tax expense—net income—must be included in the allocation base in order for that base to be representative of the factors on which the total payment is based.

The court in *Boeing I,* in explaining an assessment base method of tax cost alloca-

tion, stated that "costs are allocated by using the base which was used to measure the particular tax." 680 F.2d at 134. Section 23151 of the California Revenue and Taxation Code imposes the California Franchise Tax on a corporation as "a tax according to or measured by its net income," subject to a minimum tax of $200. FF 15. In the case of a taxpayer which operates only in California, the tax is computed simply by multiplying the taxpayer's total net income by the applicable tax rate. For such a taxpayer, the assessment base and sole cause of its California Franchise Tax expenses is the taxpayer's total net income. For taxpayers with multistate operations, section 25121 of the California Revenue and Taxation Code provides that the taxpayer shall "apportion its net income" based on the statutorily prescribed "apportionment factors." FF 15, 17, and 18. Thus, for Lockheed, the assessment base, or measure of the tax, is a portion of its net income determined by multiplying Lockheed's total net income by an apportionment percentage. Lockheed's net income and its apportionment percentage thus jointly measure or cause the tax expense and together determine the assessment base for the tax. Total net income—the sum of the incomes (losses) of the various segments—is a significant cause of the California Franchise Tax expense. An increase in Lockheed's net income causes a proportional increase in its tax expense, and a decrease in net income causes a proportional decrease in its tax expense. The causal relationship between Lockheed's net income and the tax expense is an arithmetical fact.

■ We hold that in order for Lockheed's California Franchise Tax to "be allocated to benefited segments using an allocation base representative of the factors on which the total payment is based" both causal factors, the segment's net income, and the contribution by the segment to the apportionment factors, can be included in an appropriate manner. Since the parties stipulated that "if CAS 403 permits net income to be included as a factor in the allocation base, the Lockheed Method com-

plies with CAS 403 and shall be used by the parties for the allocation of California Franchise Tax expense from Lockheed's home office to its individual segments," 86–1 BCA ¶ 18,614 at 93,529, we need go no further in our discussion.

Although the government urges that we look beyond CAS 403.40(b)(4) to determine whether the Lockheed Method is in compliance with CAS 403.60 and Interpretation No. 1 to CAS 403, the question is moot in light of the stipulation. The court in *Boeing I,* after noting that the standard of CAS 403 "does not necessarily mandate any particular allocation," 680 F.2d at 138, n. 9, held that the examples in CAS 403.60 are illustrative only and were not intended to be exclusive. *Id.* at 138. In addition, Interpretation No. 1 to CAS 403 does not by its terms mandate for all purposes of CAS 403 that income taxes "are to be allocated only to those segments that do business in the taxing jurisdiction." FF 41. Rather it merely interprets an illustrative allocation base in CAS 403.60.

Since Interpretation No. 1 applies only to CAS 403.60, we need not, and do not, address the validity of Interpretation 1, nor its applicability in any other context.

### CONCLUSION

Based upon (1) our holding that the causal relationship required by CAS 403 allows consideration of segment net income as one of the factors in the allocation base and (2) the parties' stipulation that if such be the case, the Lockheed Method complies with CAS 403, we affirm the decision of the Board.

*AFFIRMED*