972 F.2d 1354
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
WAYNE CONSTRUCTION, INC., Appellant,
v.
Michael P.W. STONE, Secretary of the Army, Appellee.
 No. 91-1239.
 United States Court of Appeals, Federal Circuit.
 June 10, 1992.
 
 Before ARCHER, Circuit Judge, EDWARD S. SMITH, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 ARCHER, Circuit Judge.
 
 
 1
 Wayne Construction, Inc. (Wayne) appeals the decision of the Corps of Engineers (COE) Board of Contract Appeals (board), (No. 4942, dated November 29, 1990), denying its claim for an equitable adjustment and a time extension to perform its contract. We affirm.
 
 DISCUSSION
 I.
 
 2
 Wayne was awarded a contract for the dredging and construction of breakwaters and a boat harbor at Metlakatla, Alaska on June 14, 1979. The contract specifically prohibited underwater blasting except during the months of October and November. Wayne contends that due to "artificial restrictions" it was not able to conduct blasting operations in 1979 during the time frame required by the contract, and was forced to wait until October-November 1980 to blast. This led to a delay in completing the contract and as a result the COE assessed $150 a day of liquidated damages. Wayne claims it was entitled to an extension of time in which to complete the contract because of the government's actions and restrictions. Wayne also claims it is entitled to an equitable adjustment to the contract price because of differing site conditions.
 
 
 3
 Our standard of review on a Contract Disputes Act case is prescribed by 41 U.S.C. § 609(b) (1988) which provides, in relevant part, that:
 
 
 4
 the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.
 
 
 5
 Although the board's determination on a question of law is not final or conclusive, American Elec. Lab., Inc. v. United States, 774 F.2d 1110, 1112 (Fed.Cir.1985), it is accorded careful consideration because of the board's considerable experience in construing government contracts. United States v. Lockheed Corp., 817 F.2d 1565, 1567 (Fed.Cir.1987). This court has noted that "if the board's findings of fact are supported by substantial evidence, we will not alter them even though the record may contain evidence supporting a contrary position." Fruin-Colnon Corp. v. United States, 912 F.2d 1426, 1428 (Fed.Cir.1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." United States v. General Elec. Corp., 727 F.2d 1567, 1572 (Fed.Cir.1984) (citation omitted).
 
 II.
 
 6
 The "artificial restrictions" which allegedly prevented Wayne from conducting timely blasting operations are twofold. First, Wayne says the government delayed for one and one-half months in conducting tests on rock samples and then cancelled the test as unnecessary. Second, when the blasting was not done during the 1979 October-November window, Wayne contends that there was no reasonable basis for the government to deny permission to blast in the Spring of 1980, instead of requiring the blasting to be done in the 1980 October-November window. Wayne calls this a breach by the government of its duty to cooperate and cites Metropolitan Paving Co. v. United States, 325 F.2d 241, 242 (Ct.Cl.1963) ("Where defendant is guilty of 'deliberate harassment and dilatory tactics' ... defendant is liable.").
 
 
 7
 As to the first point, the board concluded that Wayne's failure to conduct blasting operations during the 1979 time period called for in the contract was due largely to the manner in which Wayne opted to perform the contract and to the equipment it decided to use. There is substantial evidence to support the board's findings and its decision in this respect must be upheld.
 
 
 8
 At oral argument Wayne contended that the COE had agreed to allow it to blast outside the window on the condition that Wayne obtain letters of non-objection from interested agencies and that a credit in the contract price be negotiated. Wayne has not pointed to any evidence, nor can we find any in the record, of any specific agreement between the COE and Wayne as to these matters. Rather it appears that the COE may have initially considered waiving the blasting time period, which resulted in Wayne obtaining consent letters from other agencies or organizations, but that as the board stated the COE had "second thoughts."
 
 
 9
 As for Wayne's theory that the COE did not cooperate with it or that the COE hindered Wayne's performance of the contract by refusing to waive the blasting window, the board concluded:
 
 
 10
 The Government's ultimate refusal to waive the specification was supported by a clear directive in the EIS [Environmental Impact Statement] that was repeated in the contract. In view of all of the facts, we do not find that the Government's refusal to waive the blasting provisions found in TP 1G-4.5 was unreasonable.
 
 
 11
 We cannot say that the board erred in holding that the COE had a right to adhere to the terms of the contract. The evidence shows that Wayne, and its President, were fully aware of the restrictions on blasting before entering into the contract.
 
 III.
 
 12
 To prevail on its several claims of differing site conditions, Wayne must have proved, by a preponderance of the evidence, as to each claim: (1) that the conditions indicated in the contract differed materially from those it encountered during performance; (2) that the conditions it encountered must have been reasonably unforeseeable based upon all the information available to the contractor at the time of bidding; (3) that it reasonably relied upon its interpretations of the contract and related documents; and (4) that it was damaged as a result of the material variation between the expected and the encountered conditions. Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed.Cir.1987).
 
 
 13
 On each of Wayne's differing site conditions claims, the board carefully reviewed the evidence presented and made extensive findings of fact. Based on its findings the board concluded that Wayne had not demonstrated entitlement to an equitable adjustment for any of the alleged differing site conditions.
 
 
 14
 We have carefully considered Wayne's arguments regarding the glacial till and bedrock in the harbor basin required to be dredged, the difficulty in obtaining armor rock from the BIA quarry, and the alleged variation in the fill material necessary to construct the South and West disposal area containment dikes. We are convinced that the evidence fully supports the board's findings and its conclusions (1) that the contract documents fully apprised Wayne that "dredging within the basin would be difficult" and that had the words "glacial till" been referred to in the contract document that would not "per se connote any particular degree of excavation/dredging difficulty"; (2) that in view of the repeated contractual indications of difficult dredging Wayne's "superior knowledge" claim should be rejected and (3) that the "surficial extent of the bedrock ... [did not differ] materially from what the contract had indicated." The board's findings and conclusions rejecting Wayne's claims to equitable adjustment for the differing site conditions of the BIA quarry rock and the fill for the disposal area dikes are similarly supported by the record.
 
 CONCLUSION
 
 15
 For the reasons indicated, we affirm the decision of the board.