EDWARD R. MARDEN CORPORATION, Appellant,

v.

UNITED STATES, Appellee.

Appeal No. 86–810.

United States Court of Appeals, Federal Circuit.

Oct. 14, 1986.

Thomas C. Wheeler, Pettit and Martin, Washington, D.C., argued, for appellant.

Terrence S. Hartman, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With him on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director.

Before DAVIS, Circuit Judge, COWEN, Senior Circuit Judge, and BISSELL, Circuit Judge.

COWEN, Senior Circuit Judge.

This is an appeal pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 607(g)(1) (1982), by Edward R. Marden Corporation (Marden or contractor) from a decision of the Veterans Administration Board of Contract Appeals (Board). The Board denied Marden's claim for an equitable adjustment in connection with a fixed-price construction contract for the modernization of the Veterans Administration Medical Center in West Roxbury, Massachusetts. Marden claims it is entitled to $42,136, plus interest, as an equitable adjustment due under the changes clause of the contract, for being required to furnish and install latex mastic deck floor covering, known as "composition flooring" in 18 of the building's mechanical rooms.

Although we disagree with the basis on which the Board decided the case, we affirm its decision on other grounds.

### Background

On November 4, 1981, the Veterans Administration (VA) awarded Marden a competitively bid, firm-fixed-price construction contract in the amount of $16,305,000, for modernization of Building # 1 of the Medical Center. The contract contained the usual provisions found in Government construction contracts, including a general provision entitled "Specifications and Drawings," which is generally known as the precedence clause. In substance it provides that in case of a difference between the drawings and specifications, the specifications shall govern. The clause also stated that in case of discrepancy in the figures, in the drawings, or in the specifica-

tions, the matter should be promptly submitted to the contracting officer, who was obligated to make a prompt determination in writing.

The Medical Center building is a five-story structure with mechanical rooms located adjacent to the stairwells on each floor. The 18 mechanical rooms in issue house large components of the heating, ventilating, and air conditioning systems, such as piping, pumps, boilers, chillers, fans, and related ductwork.

Section 19B of the specifications, entitled "Latex Mastic Deck Covering," described the technical requirements of a floor covering product as "latex mastic deck covering" (indicated as "composition flooring" on the contract drawings). Except for the reference to the drawings, section 19B did not indicate where the composition flooring was to be installed in the building.

Section 55 of the specifications, entitled "Color Design," set forth the color and finish schedules for all of the rooms to be renovated in the building. The abbreviation list for the finish schedule designated the letter "C" for a concrete finish. The schedule of interior finishes indicated that finish number "4A" was to receive a concrete floor.

Section 55–8 listed each of the rooms individually, with columns to show what finish the room was to receive on its floor, ceiling, walls, and doors. For the 18 mechanical rooms in question, section 55–8 showed that they were to receive a "4A" finish with a "C," or concrete, floor. There was no abbreviation for either latex mastic deck covering or composition flooring.

Each room depicted on the drawings contained the finish schedule "4A" indicating a concrete finish. The detail sections on the drawings showed that the 18 mechanical rooms were to have "composition flooring with a 6-inch base." There were also a few rooms which were not listed in the finish schedule of the specifications, but which appear on the drawings as requiring composition flooring.

Marden's bid was prepared by its vice president, Kenneth R. Hoffman. He solicited bids from subcontractors for the composition flooring portion of the work.

Marden received a proposal from New England Decks and Floors (New England) for the latex mastic flooring covering on the project in an amount of about $44,000, and this was included in Marden's prime contract bid. Before Marden's bid was submitted, New England called Marden's vice president and stated that it had not included composition flooring for room 5B110, a room which is not at issue in this case. Section 55–8 of the specifications contains the notation "4A" for room 5B110, as does drawing # 1–41. However, unlike the 18 rooms in question, there was no symbol on any of the drawings which indicated that the floor of this room was to be covered with composition flooring.

After receiving this information, Mr. Hoffman examined the drawings and specifications to determine whether the plans called for composition flooring in that room. As a result, Mr. Hoffman concluded that the subcontractor was correct in excluding room 5B110. Therefore, Marden used the amount of the subcontractor's bid in its computation of the prime contract bid.

The project was a large, complex construction job. The composition flooring represented only $50,000, or approximately 0.3 percent of the total bid price of $16,305,000.

Following the award of the prime contract, Marden entered into a subcontract with New England in the amount of $44,000, whereby the subcontractor agreed to perform all latex mastic deck floor covering work as specified in Section 19B, but excluding work in room 5B110.

On November 30, 1981, 3 months after the contract award, Mr. Hoffman submitted a request for information regarding Section 55 and various contract drawings relating to the composition floor covering. The letter stated that the room finish schedules in Section 55 did not list any latex mastic floor covering, whereas such a covering was shown on various sectional views on the drawings. Marden also requested a listing of the rooms that were intended to receive composition flooring and asked to be informed of any other discrepancies in the finish schedule. Mr. Hoffman's letter was prompted by the fact that Marden's project superintendent had discovered the conflict between the specifications and drawings while doing work on the site.

Mr. Hoffman followed this request by a letter of December 2, 1981, to the contracting officer alleging that a conflict existed between the specifications and drawings, and stating that in case of a conflict, the "specifications usually take precedence."

On December 14, 1981, the VA advised the contractor that latex mastic floor deck covering was required in all of the new mechanical rooms.

On December 17, 1981, Norman L. Schroeder, Senior Resident Engineer on the project, responded to the contractor's December 2 request, by letter, stating that the specifications and drawings had been carefully reviewed and that there was no conflict between them. The letter further stated that section 55–8 did not indicate and was not intended to list "a finish or color request for mechanical room floors," but instead, that composition flooring with the 6–inch base as indicated in specific locations on the contract drawings was considered to be a composite part of the mechanical room floor and covered by Section 19B of the specifications.

After the contractor had taken issue with this response and had requested a decision by the contracting officer, Mr. Crofton, the senior project supervisor, wrote Schroeder that after a careful review of the documents and a discussion with other VA personnel and the contracting officer, he had determined that there was a conflict between the drawings and specifications, "and indeed within the specifications themselves." He stated that although the VA had intended that the plans were to require composition flooring in the mechanical

rooms, the documents as a whole were confusing and conflicting, and therefore, it had been determined that the contractor's position was correct. Accordingly, on February 11, 1982, the contractor was directed to cover the mechanical room floor slabs with a steel trowel concrete finishing.

In June 1982, Crofton was replaced by Mark Swatta, who prepared a letter signed by the contracting officer, which notified Schroeder that the issue had been reconsidered; that the drawings and specifications were not in conflict, and that the contractor should be instructed to install the composition flooring as shown on the drawings. The letter was based upon Swatta's analysis of the contract documents.

The contracting officer testified that he had originally sided with the contractor, because he believed that the contractor's interpretation was within the zone of reasonableness. However, the contracting officer testified that after Swatta's analysis showed that the contractor had included nearly $50,000 for the composition flooring in the bid, this made him (the contracting officer) believe that Marden's original interpretation of the contract was that the mastic flooring was required.

On October 15, 1982, some 8 months after the VA had originally agreed with the contractor's position, Marden was directed to install the composition flooring in the mechanical rooms as shown on the drawings.

After an unfavorable decision was issued by the contracting officer, Marden timely appealed to the Board, seeking an equitable adjustment in the amount of $42,136 for the cost of installing the composition flooring in the 18 mechanical rooms. Although the Government disagreed with the contractor's basic position, it conceded that Marden was entitled to recover an equitable adjustment for increased costs resulting from the VA's change in position. Marden was required to renegotiate its contract with New England at a cost increase of $5,135, and the Board held that Marden should recover this part of its claim.

On the remainder of the contractor's claim, the Board concluded that the contractor should have known that a serious conflict existed between the specifications and drawings. Relying on the dicta in *Franchi Constr. Co. v. United States,* 221 Ct.Cl. 796, 609 F.2d 984 (1979), the Board then held that the allowance of the contractor's claim under the order of precedence clause for costs which the contractor had already included in his bid would amount to "overreaching."

*Discussion*

I.

The Board's conclusion, that at the time its bid was submitted, Marden should have known that a serious conflict existed between the specifications and drawings, is not supported by substantial evidence.

However, we find it unnecessary to lengthen this opinion by a discussion of our basis for this holding. In Parts II, III, and IV to follow, we have set forth our reasons for affirming the Board's decision on other grounds.

II.

The contractor's principal argument in this appeal is that the specifications clearly provide that each of the mechanical room floors shall be finished in concrete and that since this provision is in conflict with the drawings, the order of precedence clause requires a holding in its favor. We reject this contention, because here we are faced with an unusual situation in which the crucial provisions of the specification are in conflict with each other.

In *Jamsar, Inc. v. U.S.,* 194 Ct.Cl. 819, 442 F.2d 930 (1971), the Board dealt with a comparable problem and refused to apply the order of precedence clause in a case where the work to be done was shown on the drawings, but was not mentioned in the specifications. Declaring that mere silence in either the specifications or the drawings does not constitute a conflict between them, the Board held that an allegation and proof that the bid price did not include the

items of work in controversy are indispendable elements of a contractor's claim for work which he asserts was not required by the contract.

■ Since we find that there is a substantial doubt as to which of the inconsistent directions of the specifications should govern in this case, we reach the same result and hold that the order of precedence clause does not resolve the issue before us.

## III.

■ It is a generally accepted rule, which requires no citation of authority, that if a contract is reasonably susceptible of more than one interpretation, it is ambiguous. Following his study of the specifications and drawings, Marden's vice president determined that the specifications required that the mechanical room floors should have an exposed concrete floor finish, whereas, two of the Government's project engineers, after a careful analysis of the specifications and drawings, reached an interpretation directly to the contrary. These differing views, without more, are sufficient to convince us that there was indeed a latent ambiguity in the contract.

It is also well settled that where a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid. *See Dale Ingram, Inc. v. United States*, 201 Ct.Cl. 56, 475 F.2d 1177, 1185 (1973); *Astro-Space Laboratories, Inc. v. United States*, 200 Ct.Cl. 282, 470 F.2d 1003, 1010 (1972); *Randolph Engineering Co. v. United States*, 176 Ct.Cl. 872, 367 F.2d 425, 430 (1966); *WPC Enterprises, Inc. v. United States*, 163 Ct.Cl. 1, 323 F.2d 874, 876 (1963).

■ Here it is obvious that in the preparation of its bid, which was accepted by the Government, Marden did not rely on an interpretation that composition or latex flooring was unnecessary in the mechanical rooms. Therefore, adherence to well established principles of contract law precludes the contractor's right to recover.

## IV.

Finally, we base our decision on the cardinal rule of contract construction that the joint intent of the parties is dominant if it can be ascertained. *See United States v. Bethlehem Steel Co.*, 205 U.S. 105, 119, 27 S.Ct. 450, 455, 51 L.Ed. 731 (1907); *J.W. Bateson Co. v. United States*, 196 Ct.Cl. 531, 450 F.2d 896, 902 (1971). The Tenth Circuit in *United States v. Cross*, 477 F.2d 317, 318 (10th Cir.1973), stated another familiar rule thus: "It is the general law of contracts that in construing ambiguous and indefinite contracts, the courts will look to the construction the parties have given to the instrument by their conduct before a controversy arises."

■ It is uncontroverted that at the time the contract was awarded, both parties intended that composition flooring would be installed in the 18 mechanical rooms. Consequently, allowance of the contractor's claim would require us to ignore the clearly demonstrated intent of both parties.

AFFIRMED.