**FROESCHLE SONS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 89–1125.**

United States Court of Appeals,
Federal Circuit.

Decided Aug. 15, 1989.

Unpublished Opinion Aug. 15, 1989.

Published Opinion Dec. 5, 1989.

John Skowronek of Lamont & Associates, Minot, N.D., submitted for appellant.

Steven A. Hemmat, of the Civil Div., Dept. of Justice, Washington, D.C., submitted for appellee. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Of counsel was Jeffrey D'Agosta, Asst. Dist. Counsel, Army Corps of Engineers, Omaha Dist.

Before RICH, Circuit Judge, NICHOLS, Senior Circuit Judge,* and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

Froeschle Sons, Inc. appeals the decision of the Armed Services Board of Contract Appeals (Board), ASBCA No. 34,864, 88–3 B.C.A. (CCH) ¶ 21,099, denying its claim for an equitable adjustment to its contract with the United States. We vacate and remand.

## BACKGROUND

On April 3, 1986, the United States Department of the Army (government) entered into Contract No. DACA45–86–C–0089 with Froeschle for the construction of an Air Launch Cruise Missile maintenance facility at the Minot Air Force Base in Minot, North Dakota. Among the tasks to be accomplished was the installation and testing of fuel distribution equipment and piping. The mechanical work required for the fuel distribution system was subcontracted to C & C Plumbing & Heating (C & C).

On drawing M–20, defuel lines and fill lines are shown leading through various valves into a pair of tanks. Drawing M–20 shows the defuel lines to be constructed of 1″ pipe and the fill lines to be constructed of 3″ pipe. Drawing M–20 references drawing M–22 concerning further details of the valves' locations.

A schedule included on drawing M–20 indicates that each of the valves through which the fill lines and defuel lines pass are 4″ valves. Further, drawing M–22 shows that defuel and fill lines leading into and from these four valves are constructed of 4″ pipe.

Only after award and during the course of a field layout of the piping did Froeschle's subcontractor realize that the 4″ valve sizes were incompatible with the defuel and fill line pipe sizes (1″ and 3″ respectively) called for by drawing M–20. Froeschle requested clarification of the drawings from the Army Corps of Engineers (Corps), but by that time it had already ordered the pipe of the smaller sizes. The Corps explained that both defuel lines should be constructed of 4″ pipe, not 1″ pipe as stated on drawing M–20. Also, one of the fill lines should be constructed of 4″ pipe rather than the 3″ pipe specified in drawing M–20. The Corps required that installation of the proper piping be provided at no additional cost to the government, it being the Corps' position that the proper pipe size was correctly indicated in the contract schedules and details. Having already received the 3″ and 1″ special order piping, Froeschle returned this material to its supplier and received a credit less substantial restocking charges. The 4″ piping

* Senior Circuit Judge Nichols participated in the consideration of this case but, due to illness, took no part in the decision.

was then special ordered and appropriately installed.

Froeschle submitted a claim to the contracting officer (CO) for equitable adjustment of its contract to cover the additional expenses incurred as a result of the alleged change ordered by the Corps. Specifically, Froeschle sought an adjustment to cover the cost of restocking the special-order 1″ and 3″ pipe plus the additional labor and materials required to install the 4″ pipe. The CO denied the claim, and Froeschle appealed to the Board, electing its Rule 12.3 "Accelerated" procedure. The case was submitted without a hearing under Rule 11, *i.e.*, upon documents. The Board denied the appeal, stating that Froeschle did not rely on its interpretation of the ambiguous drawing in preparing its bid and thus could not prevail. Specification Section 1A, ¶ 3.2. Froeschle obtained reconsideration and submitted additional affidavits of its president and its mechanical subcontractor. In its reconsideration decision, the Board considered the affidavits and found that "[t]he affidavit by appellant's subcontractor (C & C) establishes C & C's reliance on the claimed interpretation in its bid to Froeschle." It also noted that Froeschle's president stated that the bids of three other mechanical subcontractors were competitive and none inquired about the discrepancy in the drawings. Froeschle "incorporated subcontractor's [sic] bids into [its] general bid for the project." The Board nevertheless adhered to its position that reliance on the claimed interpretation had not been adequately established.

## OPINION

The present dispute concerns the original requirements of the contract documents furnished by the government with the Invitation for Bids. It is undisputed that drawings M–20 and M–22 contain incompatible requirements concerning the sizes of the pipes and valves to be employed in the fill and defuel lines. Accordingly, our jurisprudence dictates that the dispute be resolved by classifying the ambiguity as either of the latent or patent variety. *See, e.g., United States v. Turner Construction Co.*, 819 F.2d 283, 285 (Fed.Cir.1987). If the error is latent, Froeschle is entitled to relief if it reasonably relied upon its interpretation of the drawings. *Id.* Otherwise, no relief is warranted. Rather than undertaking to classify the ambiguity in one of the two categories, however, the Board instead held that Froeschle was precluded from relief because it failed to show sufficient reliance upon its claimed interpretation of the ambiguous requirement. The Board erred in applying a test that was too restrictive.

■ The Board found that Froeschle's subcontractor, C & C, used the claimed interpretation in pricing its work and that its price was comparable to those of other prospective subcontractors contacted by Froeschle. Froeschle's bid reflected these estimates. Because Froeschle was unaware of the inconsistency in the drawings, it adequately established reliance when it proved that its subcontractor relied on that interpretation and that there was no wide discrepancy in the other prices it obtained. Froeschle is not required to prove that it specifically included C & C's price in making its bid.[1]

It is well to remember that price adjustments of this type are equitable in nature. In the present setting, it was the government which wrote the contract and this dispute arose because the government

---

1. We have considered *Lear Siegler Management Servs. Corp. v. United States*, 867 F.2d 600 (Fed. Cir.1989), and *Edward R. Marden Corp. v. United States*, 803 F.2d 701 (Fed.Cir.1986), as well as cases of our predecessor court which the government has cited in support of its argument that the Board's decision should be affirmed and do not find them to be controlling. In none of these cases was *any* reliance on the claimed interpretation of the contract demonstrated. In *Lear Siegler*, "[t]he actual basis on which appel-

lant prepared its bid was its prior experience with a similar contract," not on the claimed interpretation of the ambiguous term of the contract or on the data provided in the technical exhibit to the contract. 867 F.2d at 604. Similarly, in *Marden*, the court said "[h]ere it is obvious that in the preparation of its bid, ... Marden did not rely on an interpretation that composition or latex flooring was unnecessary in the mechanical rooms." 803 F.2d at 705.

failed to issue solicitation documents that could be relied on. Prospective bidders are not required to perform the government's work in its stead; it too must be a responsible party in the contracting process.

 Accordingly, the Board's decision is vacated and the case is remanded for a determination of whether the error in the drawings was a patent ambiguity that Froeschle should have discovered, and had clarified by the government, prior to submitting its bid. If so, its request for an equitable adjustment should be denied. However, if the Board should find that the drawings contained a latent ambiguity that a reasonable bidder would not normally have perceived in the bidding process, Froeschle is entitled to equitable adjustment.[2]

### COSTS

Each party shall bear its own costs.

VACATED AND REMANDED.

**2.** Our decision relates only to those monies sought by Froeschle which represent the increased costs of furnishing and installing (including materials and labor) four-inch stock instead of the smaller sizes. The claimed "restocking" charges, as the Board found, could have been avoided had Froeschle performed the drawing check required by clause 3.2 prior to ordering the one- and three-inch stock. This finding would, therefore, preclude an equitable adjustment for such charges.