**FRUIN–COLNON CORPORATION, Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 90–1059.**

United States Court of Appeals, Federal Circuit.

Aug. 10, 1990.

R. Troy Kendrick, Jr., Blumenfeld, Sandweiss, Marx, Tureen, Ponfil & Kaskowitz, P.C., Clayton, Mo., argued, for appellant. With him on the brief was W. Mark Rasmussen, St. Louis, Mo.

Catherine A. Christman, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and

Stephen J. McHale, Asst. Director. Also on the brief was Vanessa R. Jones, U.S. Army Corps of Engineers, Kansas City, Mo., of counsel.

Before NIES, Chief Judge,* PLAGER, Circuit Judge, and WILL**, District Judge.

PLAGER, Circuit Judge.

Fruin–Colnon Corporation ("Fruin") entered into a contract with the U.S. Army Corps of Engineers ("Government") to construct an addition to an existing Government building in St. Louis. Part way through performance of the contract, the parties fell into disagreement over how the electrical subcontract should be performed, a dispute based on a difference in interpretation of the contract terms. The dispute was resolved only by the Government ordering Fruin to do it the Government's way, and Fruin doing it. This involved redoing some of the work already completed, and doing the balance of the work in a manner more costly to the contractor. Fruin now wants compensation for the extra cost.

The Armed Services Board of Contract Appeals ("Board") held that the contract provision in issue is ambiguous and that while Fruin's interpretation of the contract is reasonable, Fruin failed to show that it relied upon that interpretation in preparing its bid. *Fruin–Colnon Corp.*, ASBCA No. 30702, 1989 WL 74397 (May 15, 1989) (Contract No. DACA41–83–C–0039). Fruin claims that that is not what the law of contract reliance requires. We conclude that the Board is correct, and we affirm.

## I. BACKGROUND

In early 1983, Fruin submitted a bid to construct a 150,000 square foot basement addition to an existing building at the St. Louis Air Force Station. On April 18, 1983, Fruin was awarded the contract, in the

amount of $14,179,051. The contract provided in pertinent part:

2. GENERAL:

2.1 *Rules:* The installation shall conform to the requirements of the National Electric Code, except where requirements in excess thereof are specified herein.

\* \* \* \* \* \*

8. WIRING METHODS:

\* \* \* \* \* \*

8.2 *Conduit (and tubing) systems* shall be installed as indicated.... Aluminum conduit may be used only where installed exposed in dry locations.... Raceways shall be concealed where possible within finished walls, ceilings, and floors other than slabs-on-grade....

\* \* \* \* \* \*

8.2.3 Exposed raceways shall be installed parallel or perpendicular to walls, structural members, or intersections of vertical planes and ceilings.

The National Electric Code ("Code") defines the terms "exposed" and "concealed":

Exposed: (As applied to wiring methods.) On or attached to the surface or behind panels designed to allow access. [See "Accessible—(As applied to wiring methods)."]

Concealed: Rendered inaccessible by the structure or finish, of the building. Wires in concealed raceways are considered concealed, even though they may become accessible by withdrawing them. [See "Accessible—(As applied to wiring methods)."]

The Code further defines "accessible":

Accessible: (As applied to wiring methods.) Capable of being removed or exposed without damaging the building structure or finish, or not permanently closed in by the structure or finish of the building. (See "Concealed" and "Exposed.")

Fruin hired a subcontractor, Sachs Electrical Co. ("Sachs"), to install the electrical

---

* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.

** The Honorable Hubert L. Will, Senior District Judge, United States District Court for the

Northern District of Illinois, sitting by designation.

work. On April 3, 1984, Fruin submitted a working drawing, prepared by the subcontractor, to the Government that indicated that both aluminum and non-aluminum conduit above (i.e., concealed by) a suspended ceiling was to be installed in a diagonal manner—that is, not parallel or perpendicular to walls and other structural members. Fruin's subcontractor began installation of the conduit on April 9, 1984, in accordance with the drawings.

On April 12, 1984, the Government orally informed Fruin that the diagonal manner of installation was not acceptable, and on April 17, 1984, the Government formally notified Fruin in writing of its disapproval. Fruin took the position that the Government's disapproval was unwarranted, and its subcontractor, despite the disapproval, continued for almost another month to install the conduit in a diagonal manner.

Thereafter, the parties attempted to resolve their dispute. It was Fruin's contention, and the Board later so found, that the Code applies to contract terms only when they involve safety considerations. Fruin argued that the term "exposed" means "visible," and that the Code definition of "exposed," which includes "panels designed to allow access," and which thus includes conduit out of sight above suspended ceilings, only applies when there is a safety consideration involved. It was Fruin's position that the "parallel or perpendicular" requirement of section 8.2.3 is an aesthetic-based provision, and thus, that the term "exposed" in that section therefore means "visible," and that it would not include conduit concealed by a suspended ceiling.

The Government held fast to its belief that the term "exposed" applied to the conduit in dispute, and required Fruin to remove the diagonally installed conduit and replace it with parallel and perpendicular conduit runs. Fruin complied and then filed a claim with the contracting officer ("CO") for an equitable adjustment of $186,349.21 to cover the costs of the reinstallation.

On October 30, 1984, the CO denied Fruin's claim for an equitable adjustment of the contract. Fruin appealed the CO's decision to the Board, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13.

On May 15, 1989, the Board issued its opinion finding that "the Corps of Engineers intended the electrical conduit or raceways required under [the] contract to be installed above the suspended ceilings in a parallel and perpendicular fashion and that this is the way the specification had been interpreted and wiring installed for a number of years." However, the Board also found the testimony of Fruin's expert concerning the meaning of the contract term "exposed" to be persuasive, and concluded that Fruin was correct that the Code definition of "exposed" does not control when that term is used in non-safety related provisions of the contract. The Board determined that both parties' interpretations of the contract were reasonable and that the contract was thus ambiguous.

The Board ultimately denied Fruin's claim, however, because Fruin did not submit any evidence showing that it relied upon its interpretation of the contract at the time the contract was first bid. Fruin thereafter appealed to this court challenging that requirement.

## II. DISCUSSION

■ The standard of review in cases under the Contract Disputes Act is governed by 41 U.S.C. § 609(b) (1988), which states in pertinent part:

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

As the statute plainly states, and as we have said before, § 609(b) means that if the board's findings of fact are supported by substantial evidence, we will not alter them even though the record may contain evidence supporting a contrary position. *Er-*

*ickson Air Crane Co. of Washington v. United States*, 731 F.2d 810, 814 (Fed.Cir. 1984); *United States v. General Elec. Corp.*, 727 F.2d 1567, 1572 (Fed.Cir.1984) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "). Accordingly, a contractor bears a heavy burden in demonstrating that a board's factual findings should be overturned. *Koppers Co. v. United States*, 405 F.2d 554, 557, 186 Ct.Cl. 142 (1968).

As to questions of law, however, a board's decision is not final or conclusive, *American Elec. Laboratories, Inc. v. United States*, 774 F.2d 1110, 1112 (Fed. Cir.1985), and thus a board's interpretation of a contract is not binding upon this court, *B.D. Click Co. v. United States*, 614 F.2d 748, 752, 222 Ct.Cl. 290 (1980). Nonetheless, we give careful consideration and great respect to a board's interpretation because legal interpretations by tribunals having expertise are helpful even if not compelling. *United States v. Lockheed Corp.*, 817 F.2d 1565, 1567 (Fed.Cir.1987); *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir.1985).

■ At the hearing before the Board, both the Government and Fruin provided witnesses who, upon reading the contract, came to different conclusions regarding the meaning of the term "exposed" in section 8.2.3. The Board found that both parties presented reasonable though differing interpretations of the meaning of the term "exposed." The contract in this respect is ambiguous. We will not disturb the Board's findings and conclusion on this issue. *See Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed.Cir. 1986) ("These differing views, without more, are sufficient to convince us that there was indeed a latent ambiguity in the contract.")

■ The Board further held, however, that while Fruin's interpretation of the contract is reasonable, Fruin failed to show that it relied on its interpretation at the time of the bid and is thus not entitled to recover. Fruin argues that the Board's decision is erroneous as a matter of law

because the case law teaches that reliance merely need be shown during performance. We do not so read the law.

There is no dispute that Fruin did not produce any evidence that it relied on its interpretation of the term "exposed" at the time of bidding. The Board so found and we agree—there is no such evidence in the record. Indeed, the Board's decision is replete with statements concerning Fruin's failure to produce such evidence.

■ At oral argument, however, Fruin represented that at the hearing before the Board, which was limited to the issue of entitlement, the Board specifically requested that the parties not proffer evidence concerning cost considerations at the time of bidding on the premise that such evidence goes only to quantum of damages. Whatever the facts, Fruin conceded that it did not object at the hearing to the Board's conduct of proceedings, and so not having brought the issue before the Board, Fruin cannot now raise it on appeal. *Conrac Corp. v. United States*, 558 F.2d 994, 1000, 214 Ct.Cl. 561 (1977); *William F. Klingensmith, Inc. v. United States*, 505 F.2d 1257, 1265–66, 205 Ct.Cl. 651 (1974).

Fruin contends further, however, that since it can produce evidence of reliance during performance, evidence of reliance at the time of bidding is not necessary. The only evidence Fruin produced with regard to reliance—*at any time*—is that its subcontractor, Sachs, submitted drawings during performance that showed diagonally running conduit above a suspended ceiling and that Sachs testified that it felt that such installation was in accordance with the contract. As the Board stated in its decision:

In preparing the working drawing for the basement wiring, [Fruin's] electrical subcontractor concluded that the requirement for placing exposed raceways parallel or perpendicular to walls and ceilings was for aesthetic, not safety, purposes and that, therefore, the National Electric Code would not apply. However, the record is devoid of any evidence that this was also the interpretation used by

[Fruin] at the time of bidding the contract.

*Fruin–Colnon Corp.*, ASBCA No. 30702, slip op. at 4 (May 15, 1989). Fruin would like this court to believe that Sach's reliance on its interpretation of the term "exposed" at the time it prepared the drawing, i.e. during performance, can be imputed to Fruin to show the kind of reliance necessary to support a finding of entitlement in its favor. Fruin's reasoning, however, does not withstand analysis.

The general rule is that "where a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid." *Lear Siegler Management Servs. Corp. v. United States*, 867 F.2d 600, 603 (Fed.Cir.1989); *Edward R. Marden Corp. v. United States*, 803 F.2d at 705; *accord Froeschle Sons, Inc. v. United States*, 891 F.2d 270, 272–73 (Fed.Cir.1989); *United States v. Turner Constr. Co.*, 819 F.2d 283, 286 (Fed.Cir.1987). This rule of law is well settled. *Lear Siegler Management Servs. Corp.*, 867 F.2d at 603; *Edward R. Marden Corp.*, 803 F.2d at 705. The burden of proving reliance on the claimed interpretation thus falls on the contractor.

■ Fruin offers to carry its burden by showing that a subcontractor's reliance can be imputed to the contractor. In support, Fruin cites a recent decision of this court— *Froeschle Sons, Inc. v. United States*, 891 F.2d 270 (Fed.Cir.1989). In *Froeschle*, the Government took bids for the construction of an Air Launch Cruise Missile maintenance facility. In preparing its bid, Froeschle, the contractor, gathered bids from subcontractors to perform the fuel distribution system work. After the contract was awarded to Froeschle, it was discovered that two drawings depicting defuel and fill lines indicated inconsistent sizes to be used for the same pipes. The subcontractor had planned to use 1″ and 3″ pipes, as shown in one of the drawings, but the Government demanded that 4″ pipe be used, in accordance with the other drawing. *Id.* at 271. The board found that the subcontractor, in submitting its bid to

Froeschle, relied on its interpretation of the drawings, i.e. use of the smaller pipe. The board also found that Froeschle incorporated the subcontractor's bid into its general bid to the Government. *Id.* at 272. Froeschle had not discerned the conflict in the drawings, and thus had not itself formulated an interpretation of the drawings prior to bidding.

This court held that Froeschle would be entitled to an equitable adjustment if it reasonably relied upon the drawings as understood by the subcontractor. Though we remanded the case to determine whether Froeschle's reliance was reasonable, we specifically held that "[b]ecause Froeschle was unaware of the inconsistency in the drawings, it adequately established reliance when it proved that its subcontractor relied on that interpretation and that there was no wide discrepancy in the other prices it obtained." *Id.*

*Froeschle* does demonstrate that a subcontractor's reliance can, under certain circumstances, be imputed to the contractor; however, that case does not support Fruin on these facts. In *Froeschle*, the contractor used the subcontractor's bid, and hence the subcontractor's interpretation of the drawings, in putting together its general bid to the Government. Froeschle relied on the subcontractor's interpretation at the time of bidding.

In the present case, Fruin has not presented any evidence showing that its subcontractor, Sachs, relied on the claimed interpretation of the term "exposed," i.e. "visible," in its bid to Fruin. It was during performance that Sachs prepared the drawings showing diagonally running conduit. Mr. Sullivan, Vice President of Sachs, testified that he first became aware of section 8.2.3 of the contract, the provision containing the disputed term, when Sachs "ran into the problem of running the conduit," i.e. during performance. Mr. Sullivan also testified that it was at that time that he interpreted the meaning of the term "exposed." The most that can be concluded from this evidence is that sometime after bidding, Sachs interpreted the term "exposed" to mean "visible." And thus the

most that can be imputed to Fruin is the same. *See Dale Ingram, Inc. v. United States,* 475 F.2d 1177, 1185, 201 Ct.Cl. 56 (1973) (a contractor cannot contend that it relied on its interpretation of a disputed term at the time of bidding when it had no knowledge then of the term's existence). Fruin has not shown reliance, either imputed or direct, at the time of bidding.

Fruin contends that two earlier Court of Claims cases, which are binding precedents of this court, support its position that mere reliance during performance is sufficient to prove entitlement. These cases are *Astro–Space Laboratories, Inc. v. United States,* 470 F.2d 1003, 200 Ct.Cl. 282 (1972), and *WPC Enters., Inc. v. United States,* 323 F.2d 874, 163 Ct.Cl. 1 (1963).

In *WPC,* the contractor and the Government disputed whether, under a contract for the manufacture of generators, certain components of the generators had to be manufactured by specific named companies. After finding the contract ambiguous, and both parties' interpretations reasonable, the Court of Claims made the following statement:

> It is precisely to this type of contract that this court has applied the rule that if some substantive provision of a government-drawn agreement is fairly susceptible of a certain construction and the contractor actually and reasonably so construes it, *in the course of bidding or performance,* that is the interpretation which will be adopted—*unless the parties' intention is otherwise affirmatively revealed.* [Citations omitted].

*WPC,* 323 F.2d at 876 (emphasis added); *accord Astro–Space Laboratories, Inc. v. United States,* 470 F.2d 1003, 1011, 200 Ct.Cl. 282 (1972). Despite the language above, the *WPC* court, in reaching its decision, focused on pre-award events. The court found that the Government, before awarding the contract, did reveal its interpretation of the disputed terms to the contractor. However, it also found that "when the [contractor] demurred the Government did not adequately indicate that it stood steadfast by its announced opinion." *WPC,* 323 F.2d at 879. And so,

finding that the Government's intention was not *affirmatively* revealed, the Court of Claims held in favor of the contractor on the issue of liability. *Id.* at 880.

Assuming *arguendo,* that *WPC* stands for the proposition that a contractor's reliance during *performance* is sufficient to establish its right to relief, Fruin still must overcome the obstacle posed by the final clause of the above quotation: "unless the parties' intention is otherwise affirmatively revealed." The Government upon learning of Fruin's performance-based interpretation notified Fruin three days after Sachs began installation that diagonally run conduit is unacceptable—and it "stood steadfast" in its opinion. The Government affirmatively revealed its intention. Yet Sachs continued to install the conduit in such a fashion for nearly a month thereafter. Thus, even under the most liberal reading of *WPC,* Fruin would only be entitled to relief for the costs of reinstallation as a result of the first three days of the diagonal installation.

But the Court of Claims did not itself read *WPC* the way Fruin does. In *Randolph Eng'g Co. v. United States,* 367 F.2d 425, 429–30 (1966), the court said:

> According to plaintiff's interpretation of WPC Enterprises [sic] the contractor's interpretation of an ambiguous term must be adopted if the government drafted the contract. However, the plaintiff's interpretation is not an accurate statement of the *WPC Enterprises* rule. *WPC Enterprises* says that the contractor's interpretation of a government-drawn agreement will be adopted if the contractor *actually* and *reasonably* (emphasis in original) relied upon that interpretation *when it entered into the contract.* (Emphasis added).

In the present case, Fruin would have us hold, contrary to *Randolph,* that it is entitled to relief merely because during performance it developed an interpretation of an ambiguous term in a government-drafted contract. That is not our reading of the law, nor do we think it should be.

To hold in Fruin's favor without proof of reliance at the time of bidding would raise

some troubling questions. For instance, Fruin has not shown how it actually prepared its bid. Without such evidence one is left to speculate: did Fruin base its bid on an early decision—and cost analysis—by Sachs that the contract allowed diagonal runs, or did Fruin include in its bid the costs of running the conduit parallel and perpendicular as the Government contends it should be. The latter would likely raise the cost of the contract in comparison to using diagonal conduit runs because more pipe and more labor would be needed (even assuming it did not have to be done twice). On this theory, later, when Sachs offered the drawings showing diagonal installation, Fruin discovered that the contract may be subject to the claimed interpretation and that it could install the pipe more cheaply than it had anticipated, thus receiving a windfall from the Government.

In the absence of evidence on the point, an appellate court is not at liberty to speculate. Evidence at the time of bidding is thus crucial to proving reliance. As Mr. Jaggers said, "Take nothing on its looks; take everything on evidence. There's no better rule." C. Dickens, Great Expectations ch. 40 (1861).

The other case cited by Fruin, *Astro–Space Laboratories, Inc. v. United States,* 470 F.2d 1003, 200 Ct.Cl. 282 (1972), involved a contract interpretation dispute in which the contract was determined not to be ambiguous; it thus offers no support for Fruin's cause.

### CONCLUSION

The Board was correct in concluding that Fruin failed to prove reliance at the time of its bid, and so it is not entitled to an equitable adjustment for the costs of reinstallation of the conduit. Accordingly, the decision of the Board is

AFFIRMED.