1 F.3d 1252
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 PACIFIC REFINING COMPANY, Appellant,
and
Powerine Oil Company, USA Petrochem Corporation, Tosco
Corporation, La Jet, Inc., C. Itoh & Company (America) Inc.,
Fletcher Oil & Refining Company, Newhall Refining Company,
Inc., Oasis Petroleum Corporation, Appellants,
v.
James D. WATKINS, Secretary of Energy, Appellee.
 Nos. 91-1491, 91-1490.
 United States Court of Appeals, Federal Circuit.
 June 8, 1993.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Aug. 31, 1993.
 
 Before ARCHER, LOURIE and CLEVENGER, Circuit Judges.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 In this consolidated appeal, Pacific Refining Company, Powerine Oil Company, USA Petrochem Corporation, Tosco Corporation, La Jet, Inc., C. Itoh & Company (America), Inc., Fletcher Oil & Refining Company, Newhall Refining Company, Inc., and Oasis Petroleum Corporation (collectively appellants) appeal from the decision of the Department of Energy (DOE) Board of Contract Appeals (board), (EBCA Nos. 278, 280-283, 290, 296, 300-305, 307 and 321, May 14, 1991), denying claims that they were overcharged under their 1978-80 contracts with DOE for purchases of crude oil. We affirm.
 
 DISCUSSION
 
 2
 A. Contract interpretation is a question of law reviewed de novo by this court. George Hyman Constr. Co. v. United States, 832 F.2d 574, 579 (Fed.Cir.1987); B.D. Click Co. v. United States, 614 F.2d 748, 752 (Ct.Cl.1980). The board's decision is nevertheless accorded careful consideration because the interpretation of a contract by a tribunal having expertise is helpful even if not controlling. Fruin-Colnon Corp. v. United States, 912 F.2d 1426, 1429 (Fed.Cir.1990); Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed.Cir.1985). The board's findings of fact are final unless arbitrary, capricious, based upon less than substantial evidence, or rendered in bad faith. 41 U.S.C. Sec. 609(b) (1988); American Elec. Lab., Inc. v. United States, 774 F.2d 1110, 1112 (Fed.Cir.1985).
 
 
 3
 B. Each appellant entered into one or more contracts with DOE in 1978-80 for the purchase of crude oil from the Elk Hills Naval Petroleum Reserve No. 1 pursuant to the Naval Petroleum Reserves Production Act of 1975, 10 U.S.C. Sec. 7420 et seq. The Act provided for the sale of crude oil "to the highest bidder ... at a cost of not less than the prevailing local market price of comparable petroleum." 10 U.S.C. Secs. 7430(b) and (d). Under their contracts, appellants were required to pay for oil purchased at the "crude base price in effect on the date of delivery" adjusted for any applicable bonus or discount bid by each appellant. Although the pricing provision differed slightly for the various contracts, a typical provision defined crude base price as follows:
 
 
 4
 "Crude base price" ... shall be the highest posted stripper well oil price per barrel of all the prices which are posted or published by purchasers of crude oil [from designated oil producing fields].
 
 
 5
 Appellants challenge DOE's use of the posted prices of ARCO Petroleum Products Company because ARCO failed to satisfy the purchaser requirement in the crude base price definition. To qualify as a "purchaser of crude oil," according to appellants, a posting company must make (1) an arm's length purchase (2) of stripper well, or uncontrolled, oil (3) in more than a de minimis amount (4) at the posted price (5) from the field and (6) in the month for which the posting applied. Specifically, they contend ARCO was not such a purchaser in the months of November 1979 and February through June 1980.
 
 
 6
 Appellants argue that their interpretation is consistent with the plain language of the contracts, and is further compelled because "purchaser" in the crude base price provision was intended to ensure economic validity and establish an accurate prevailing local market price. They contend in particular that the several unstated requirements are consistent with and required under the board's earlier decision in Powerine I. Powerine Oil Co., EBCA No. 117-3-80, 81-2 BCA (CCH) p 15,430.
 
 
 7
 C. The board considered the same unstated embellishments to the contract phrase "purchasers of crude oil," which are now urged on us. It concluded that appellants' interpretation improperly attempted to add implied terms which conflicted with the express and unequivocal language of the contract.[1] The board further found appellants' interpretation to be unreasonable and administratively unmanageable.
 
 
 8
 We agree with the board that the reading urged by appellants is simply not required by the contract language. For example, while the contract requires the posted prices be those of a "purchaser of crude oil," it does not require that a posting company be a "purchaser of stripper well or uncontrolled oil." The board pointed to evidence that ARCO did purchase crude oil during each of the contract periods in question. Similarly, the contract language says nothing about any of the other unstated requirements which appellants contend should be read into the crude base price definition.
 
 
 9
 As to appellants' argument that the holding in Powerine I is controlling in this case under principles of collateral estoppel and stare decisis, we conclude that the board was correct in rejecting this argument. As the board found, only the Newhall contract in 1978 has the same contract language as the contract in Powerine I. The crude base price definition there required that the posting companies be "principal purchasers" and that the prices be "regularly posted or published." With these requirements missing in the contracts here at issue, we cannot say that the board erred in giving a different meaning to the purchaser requirement and, therefore, refusing to apply collateral estoppel or stare decisis to the instant contracts (other than the 1978 Newhall contract).
 
 
 10
 Finally appellants assert that the principles of Powerine I are nevertheless necessary here to ensure competitive pricing and an accurate local market price. We believe that any such requirement is met by ARCO's activity in the market place by its posting of prices and its purchases of crude oil. The evidence does not support appellants' contention that ARCO's posting of prices did not reflect market realities. Moreover, the statutory requirement is that the sales be at "not less than prevailing local market price." We agree with the board that the government's use of ARCO's postings is consistent with the statutory mandate.
 
 
 11
 We have considered appellants' other arguments and conclude they are without merit. The board did not abuse its discretion in refusing to admit certain evidence and did not act arbitrarily when it awarded appellant Newhall the amount under its 1978 contract set forth in its complaint.
 
 
 12
 Accordingly, the board's decision is affirmed.
 
 
 
 [1]
 The board found in favor of Newhall, however, because one of its contracts (1978 contract) contained the same provisions as involved in Powerine I