82 F.3d 434
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Anna M. OTTINGER, Petitioner,
v.
DEPARTMENT OF AIR FORCE, Respondent.
 No. 96-3018.
 United States Court of Appeals, Federal Circuit.
 March 12, 1996.
 
 Before NEWMAN, MAYER, and PLAGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Anna M. Ottinger petitions for review of the initial decision of the Merit Systems Protection Board, No. AT0752950602-I-1, affirming her removal from the Department of the Air Force for unauthorized absence. The initial decision became final on September 20, 1995, when the full board denied her petition for review. We affirm.
 
 
 2
 We must affirm the board's decision unless it is shown to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994). Ottinger has not met this burden.
 
 
 3
 Ottinger cites numerous cases in arguing that the board's decision is inconsistent with precedent and thus not in accordance with law. The board recognized that the primary issue is whether the agency abused its discretion in denying Ottinger leave without pay (LWOP). See Campana v. Department of Navy, 873 F.2d 289, 291 (Fed.Cir.1989) (authorization of LWOP, where medical excuses are involved, is a matter of agency discretion). Of course, the reasonableness of an agency's denial of LWOP requests depends on the facts of each case. The board held that the agency's denial of Ottinger's leave requests was reasonable; therefore, she was absent without leave (AWOL) during the period in question. We conclude that the board's holding was in accordance with law and supported by substantial evidence.
 
 
 4
 According to the record Ottinger planned to attend nursing school in the Fall of 1994. She had registered for fifteen hours of classes, all held during the work week, in January 1994. Yet, she never consulted her supervisor to try to arrange a mutually convenient work schedule that would allow her to attend class. It is also clear that because her early-out request had not been acted upon by the time classes had begun, Ottinger needed leave to attend classes: however, she had no annual or sick leave accrued. Classes began on September 28, and she was granted leave because of illness September 28-30. She came to work on October 3, but did not return until December 8, the day after final exams ended.
 
 
 5
 The record shows that on October 4, Ottinger called in to work sick. Again on October 11, she left a voice mail message requesting that she be placed on sick leave. On October 12, she informed her supervisor that she had obtained a "doctor's certificate" for 30 days of sick leave. Having verified that Ottinger was enrolled in nursing classes, her supervisor requested all such "doctor's certificates." He also told her that her sick leave requests were denied and that she would be considered AWOL until he confirmed "the validity of her doctor's certificates." By memorandum dated October 18, the supervisor again requested the doctor's certificates and asked Ottinger to sign a medical information release so he could obtain additional information from her doctors about her illness. He further reiterated that she would remain in AWOL status until he was satisfied that she had a valid medical excuse for her absence.
 
 
 6
 The two medical certificates Ottinger provided to the agency on October 25 are quite cryptic. The first is from Dr. Wilson for the period October 4-7 and excuses her "due to illness." The second, from Dr. Rowland, says simply that Ottinger had an appointment on October 11, 1994, and that she may return to work on November 14, with no further explanation. The agency, and the board, found these to be insufficient to support her leave request. Thus, because Ottinger's refusal to sign the release prevented the Air Force from obtaining more information about her condition, the agency removed her for unauthorized absence. While Ottinger argues that her absence was due to stress and back problems, she did not inform her superiors of the back problems until she returned to work in December, after she had received the notice of proposed removal. Also, throughout her absence, she drove to school and sat through lectures, which the agency's doctor found inconsistent with her inability to work because of back problems. Her stress, on the other hand, was diagnosed by a chiropractor, who, two doctors testified, is not qualified to give such diagnosis. Based on the record evidence and the fact that the board properly looked to the Douglas factors in analyzing the propriety of Ottinger's removal, we see no error in the board's affirmance of the agency's action.
 
 
 7
 Ottinger also argues that the board committed "harmful procedural error" in failing to admit certain unidentified evidence, and again erred in disallowing unspecified rebuttal testimony pertaining to the reasonableness of the agency's penalty. The problem with both of these arguments is that Ottinger has not specified what testimony or evidence was excluded; thus, we are unable to determine the prejudicial effect, if any, of the exclusions. The same is true of Ottinger's ineffective assistance of counsel argument. She has simply given us no facts upon which to evaluate her counsel's representation.
 
 
 8
 Finally, Ottinger argues that the agency constructively suspended her by retroactively placing her on AWOL status. It appears that this issue is raised for the first time in this appeal. Consequently, we decline to address it. See Fruin-Colnon Corp. v. United States, 912 F.2d 1426, 1429 (Fed.Cir.1990).